In the Matter of OVERSEAS NATIONAL AIRWAYS, INC., Debtor.

No. 63–B–1043.

United States District Court
E. D. New York.

Feb. 16, 1965.

Cohen & Weiss, New York City, by Herbert A. Levy, New York City, of counsel, for Air Line Pilots Assn. International, for the petition.

Levy, Levy & Ruback, by Sydney Basil Levy, New York City, for the debtor, in opposition.

RAYFIEL, District Judge.

This is a petition to review an order of the learned Referee in Bankruptcy, dated November 19, 1964, which authorized the debtor to disaffirm two collective bargaining agreements pursuant to Section 313 (1) of the Bankruptcy Act (Section 713 (1) of Title 11, U.S. Code) on the ground that they were onerous and burdensome.

The debtor, a supplemental air carrier, domestic and foreign, had entered into a collective bargaining agreement with its pilots on October 12, 1962 and with its flight stewardesses on March 9, 1963. Both units were represented by the Air Line Pilots Association, International, (ALPA), the petitioner herein.

The petitioner urges several grounds for the reversal of the Referee's findings. I shall discuss only those I deem pertinent. They are two in number. The first is that the Referee had no power to permit the rejection of the said collective bargaining agreements since the Railway Labor Act (45 U.S.Code §§ 151–163, 181–185) prescribes the exclusive means by which such rejection may be effected, a procedure which was not followed herein. The second is that the Referee's finding that the agreements were onerous and burdensome was not supported by the evidence and, hence, was clearly erroneous.

In support of the first point ALPA argues that the provisions of the Railway Labor Act govern the relationship between air carriers and their employees, and cites Sections 201–205 of the said Act (Title 45 U.S.Code, Sections 181–185) as authority therefor, a position the correctness of which neither was nor can be seriously disputed by the debtor. It argues further that Section 77, sub. n of the Bankruptcy Act (Section 205, sub. n of Title 11, U.S.Code) provides that, "No judge or trustee acting under this Act shall change the wages or working conditions of railroad employees except in the manner prescribed in The Railway Labor Act (Sections 151 to 163 of Title 45), as amended June 21, 1934, or as it may be hereafter amended." (Matter in parenthesis added). It then points out that Section 2, subdivision Seventh of the Railway Labor Act (Section 152, subdivision Seventh, of Title 45 U.S.Code) provides that "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in Section 6 (Section 156 of Title 45 U.S.Code) of this Act" (matter in parenthesis added). The said Section 6 provides that "Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 5 of this act, by the

Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board." The term "carrier", as defined in Section 1, First of the Railway Labor Act (Section 151, First, of Title 45, U.S. Code) includes "any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any such 'carrier'." The petitioner concludes, therefore, that the collective bargaining agreements could be altered or abrogated *only* by recourse to the procedure thus outlined, and, hence, that the Referee had no authority to cancel them summarily.

■ I agree. The collective bargaining agreements in question, governed, as I believe they are, by the provisions of the Railway Labor Act, can be changed or cancelled only in conformity with that Act.

The case of In Re Klaber Bros. Inc., D.C., 173 F.Supp. 83, cited by the debtor as authority for the principle that the Referee, in a proceeding for an arrangement under Chapter XI of the Bankruptcy Act, has the power to permit the rejection of a collective bargaining agreement if the rejection is to the advantage of the debtor's estate is clearly distinguishable from the case at bar. In the Klaber case Judge Levet found that the National Labor Relations Board did not, as claimed by the union, have preemptive jurisdiction over the cancellation of the collective bargaining agreement by reason of Section 15 of the Labor Management Relations Act of 1947 (Title 29 U.S.Code Section 165). He found, at page 84, supra, that that case involved "no conflict between Section 672 of Title 11 U.S.C.A. and the National Labor Relations Act (Title 29 U.S.C.A. § 141 et seq.)" In the case at bar, on the other hand, the debtor's employees are covered by the Railway Labor Act which, by the terms of the Bankruptcy Act itself [Section 77, sub. n Section 205, sub. n of Title 11, U.S.Code], prescribes the *only* method by which collective bargaining

agreements of the kind here involved may be disaffirmed.

I come now to the second argument advanced by the petitioner: that the Referee's finding that the agreements were burdensome and onerous is not supported by substantial evidence and is clearly erroneous. I have read the transcript of the testimony taken before the Referee from which it appears that two witnesses testified on behalf of the debtor in support of this contention.

The first witness, one Albert Blomquist, testified that he was a consulting transportation engineer. He was asked, at page 13 of the transcript, whether he had "made an analysis of the cost of flight crews on ONA (the debtor) under its present contract as compared to the cost of other supplemental carriers." (Matter in parenthesis added). He replied: "We have done this with respect to captains and co-pilots and stewardesses." He then went on to testify that he had made an analysis of the debtor's costs for compensation to its pilots under the collective bargaining agreement, as compared with that of two other supplemental air carriers, Capital Airlines and Coastal Airways, and that the latters' costs were as much as 50% lower than the debtor's. However, his testimony on cross examination disclosed that in his analysis he had failed to consider the type of aircraft flown and their capacity, weight, speed and destination, whether they were powered by jet or conventional engines, the seniority of the pilots and other criteria. As a matter of fact he testified that he made his analysis by sampling "quite a few of the Captains, Capital, Modern and Coastal (Airlines) so that they averaged, their average pay was based on a mileage basis." (Matter in parenthesis supplied.) (Transcript p. 56). He testified further (p. 58 of the transcript) that the sampling consisted of six pilots in all, two each of Capital, Modern and Coastal, the amount of whose paychecks was divided by the mileage flown, in order to ascertain the purported cost per mile. The analysis was not based on an examination of the books and records of the companies in question, nor was it supported by a true and adequate sampling of pilots' salaries.

The second witness was Roy Sizmur, the debtor's accountant. He testified that crews' salaries and expenses, exclusive of stewardesses', was 24% of the debtor's operating costs, 19% of its net revenues, 36.8 cents per DC–7 mile flown, 51.4 for each DC–7CF mile flown and $170.70 for each hour flown. Sizmur's figures, too, fail to truly and accurately establish the costs incurred by the debtor allocable to the employees covered by the collective bargaining agreements here involved for on cross-examination he testified that the said figures represented the cost of the *entire* crew, and not the pilots and stewardesses alone.

█ It is my opinion that the testimony of Blomquist and Sizmur is inadequate to support the Referee's finding that the agreements in question were onerous and burdensome and the Referee's finding to that effect is, therefore, clearly erroneous.

█ The petitioner has argued that collective bargaining agreements are not "Executory Contracts" within the meaning of Section 313(1) of the Bankruptcy Act (Section 713(1) of Title 11, U.S. Code), and cites as authority therefor the case of United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409, and the case of John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. I disagree. Both of the above-cited cases involved the right to arbitrate a dispute, and the implementation of Congressional policy favoring the settlement of industrial disputes through the machinery of arbitration. It seems to me, however, that the Bankruptcy Court, when it *has* the power to reject a collective bargaining agreement, should do so only after thorough scrutiny, and a careful balancing of the equities on both sides, for, in relieving a debtor from its obligations under a collective bargaining agreement, it may be depriving the employees affected of their seniority, welfare and pension rights,

as well as other valuable benefits which are incapable of forming the basis of a provable claim for money damages. That would leave the employees without compensation for their losses, at the same time enabling the debtor, at the expense of the employees, to consummate what may be a more favorable plan of arrangement with its other creditors.

The petition for review is granted. Settle order on notice.