**CARPENTERS LOCAL UNION NO. 2746, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, et al., Plaintiffs,**

v.

**TURNEY WOOD PRODUCTS, INC., et al., Defendants.**

In the Matter of **TURNEY WOOD PRODUCTS, INC., Bankrupt.**

**Nos. H-68-C-6, H-68-B-5.**

United States District Court
W. D. Arkansas,
Harrison Division.
June 28, 1968.

John P. Sizemore and Philip E. Kaplan, of McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for plaintiffs.

Eugene R. Warren, of Warren & Bullion, Little Rock, Ark., for defendants.

## Memorandum Opinion

HENLEY, District Judge.

These two cases, one a suit in equity and the other a voluntary bankruptcy proceeding, present for determination an important question as to the relationship between federal labor legislation, namely the National Labor Relations Act of 1935, 29 U.S.C.A. § 151 et seq., and the Labor Management Relations (Taft-Hartley) Act of 1947, 29 U.S.C.A. § 185 et seq., on the one hand, and section 70b of the Bankruptcy Act, 11 U.S.C.A. § 110b, on the other hand.

Specifically, the question is whether the receiver-trustee of a bankrupt corporation subject to the provisions of the labor legislation which has been mentioned has the power to reject as an executory contract a collective bargaining agreement in force between the bankrupt and a labor union at the time of the filing of the petition in bankruptcy.[1]

Civil Action No. H–68–C–6, hereinafter called No. 6, is a suit by the Union against the trustee in bankruptcy to compel specific performance of the labor contract.[2] Bankruptcy Case No. H–68–

---

[1] Insofar as here pertinent, section 70b is as follows: "Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property; Provided, however, That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected. * * * "

[2] No. 6 was filed originally but improperly in the Eastern District of Arkansas. It should have been filed in the Harrison

B–5, hereinafter called No. 5, is before the Court on a petition to review orders of the Referee in Bankruptcy directing the rejection of the contract and approving the action of the bankruptcy receiver, who later was elected trustee, in rejecting it.

No. 6 is now before the Court on the motion of the defendants to dismiss the complaint.[3] No. 5 is before the Court on the petition to review accompanied by the Referee's certificate required by section 39a(8) of the Bankruptcy Act and certain documentary exhibits. Memorandum briefs, some in the form of letters to the Court, have been submitted and considered. In passing upon the motion to dismiss No. 6 the Court has considered not only the complaint and the exhibits thereto but also materials in the bankruptcy file; for that reason the motion to dismiss will be treated as a motion for summary judgment. The facts are not in dispute.

In September 1966 Turney Wood Products, Inc., of Harrison, Arkansas, was engaged in the business of the manufacture and sale of furniture designed primarily for use in churches and similar institutions. Its products were sold in interstate commerce, and it was an industry "affecting commerce" within the meaning of the National Labor Relations Act.

During the month just mentioned, Turney entered into a three year collective bargaining agreement with Carpenters Local Union No. 2746, Brotherhood of Carpenters & Joiners of America, AFL–CIO. That contract covered wages, hours of work, and conditions of employment in Turney's plant. It provided, among other things, that the employer would recognize seniority rights, and that lay-offs and recalls to work would be in accordance with the seniorities of affected employees. There was a provision for check-offs of Union dues which were to be paid over to the Union from month to month. The contract prescribed a grievance procedure with compulsory binding arbitration of disputes as the final step, and the contract contained the usual "no strike-no lockout" clause which is the quid pro quo for the grievance procedure.

On March 18, 1968, Turney was compelled to cease operations due to straitened finances. A voluntary petition in bankruptcy was filed on March 22, and adjudication and reference followed immediately. On the same day the Referee appointed L. E. Durand as operating receiver and directed him to put the plant into operation temporarily, as authorized by section 2a(5) of the Bankruptcy Act. The first meeting of creditors seems to have been held in late April, and Mr. Durand was elected trustee. He continued to operate the business after his election.

It is inferable that Mr. Durand and the Referee had determined that if the plant was to operate with any degree of success there would have to be wage reductions and a cut in the working force.

Division of the Western District. The complaint sought both preliminary and permanent relief. Since the undersigned, a judge in both the Eastern and Western Districts, holds court both in Little Rock and in Harrison, he conducted a hearing in Little Rock on the application for preliminary injunctive relief. That application was denied, and the case was transferred to the Harrison Division of the Western District. Prior to the commencement of the litigation the Referee had advertised the sale of the Turney plant as a going concern, the sale to be held on June 21. When counsel for the Union learned of the sale they objected to it in both No. 6 and No. 5. Before those objections were acted upon the plant was offered for sale; only one bid was received, and that was rejected by the Referee. Thus, the sale aborted, and the Court considers that the objections to it have become moot.

3. The defendants in No. 6 are L. E. Durand, the Trustee; the bankrupt corporation itself; and Honorable Arnold M. Adams, Referee in Bankruptcy for the Eastern and Western Districts of Arkansas. The Court is satisfied that both the Referee and the bankrupt were improperly joined as defendants, and the complaint as to them will be dismissed summarily and without further discussion.

The original order appointing the receiver authorized him to employ personnel and to fix their compensation subject to the Court's direction and supervision. That order did not refer in terms to the collective bargaining agreement, but a nunc pro tunc order of the Referee, entered in May of the current year, recites that the Referee intended from the beginning to direct the receiver to reject the agreement, and Durand's action in so doing was approved.

When the plant was reopened, the receiver repudiated the contract without notice to or prior consultation with the Union. Employees were laid off without regard to seniority, and wages were reduced. That action on the part of the receiver brought strong protests from the Union which culminated in the commencement of this litigation and in the filing of an unfair labor practice complaint with the Regional Office of the National Labor Relations Board at Memphis, Tennessee.

On May 6 the Union tendered a number of specific grievances to the trustee which the latter refused to entertain on the ground that he had properly exercised a right to reject the labor contract, and that there was no existing contract between him and the Union, and, hence, no grievance procedure to be followed. It is the Court's understanding that the trustee is taking the same position in connection with the complaint now pending before the National Labor Relations Board.

Some of the contentions of the trustee set forth in the motion to dismiss No. 6 have been disposed of already. There remain for consideration the argument that the suit cannot be maintained because plaintiff did not secure the permission of the Court to sue the trustee, and the further argument that No. 6 is an impermissible collateral attack on orders of the Referee in the bankruptcy case.

In his certificate in No. 5 the Referee states that the case presents not only the question of the right of the receiver-trustee to reject the contract but also the question of the standing of the Union to secure review of the Referee's orders. The second question certified by the Referee is not unrelated to the trustee's contention in No. 6 that the complaint therein is a collateral attack on the orders in No. 5.

█ The contention of the trustee that No. 6 must be dismissed on account of the failure of the Union to secure judicial permission to sue the trustee appears to be without merit and is rejected.

Section 959 of Title 28, U.S.C.A., provides that trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.

In 2 Collier On Bankruptcy, 14th ed., ¶ 23.13[2], p. 598, it is said that legal or equitable actions against a receiver or trustee may be divided into three classes: (1) suits against the receiver or trustee personally for wrongs committed while performing the duties of his office; (2) suits against the receiver or trustee in connection with the carrying on of the bankrupt's business subsequent to bankruptcy; and (3) suits against the receiver or trustee regarding the property of the bankrupt. It is said further that actions falling into category No. 1 or category No. 2, supra, may be filed without permission of the appointing court. As to actions falling within category No. 3, it is said that they may be brought outside the bankruptcy court only when that court consents thereto. This case seems to fall squarely within the second of Collier's categories of actions.

█ The general rule that judgments and orders of courts of record cannot be attacked collaterally is applicable to orders of a Referee in Bankruptcy. Ginger Machine Products Corpora-

tion v. Detroit Trust Company, 6 Cir., 296 F.2d 107; Johnson v. Wilson, 9 Cir., 118 F.2d 557. Section 39c of the Bankruptcy Act provides for a petition for a review of a Referee's order by any person aggrieved thereby, and for such a person that method is exclusive.[4] 2 Collier, op. cit., ¶ 39.19.

■ But, the general rule above mentioned presupposes that the affected party has available to him or to it a direct review of the order or judgment in question, and generally in the absence of a right to direct review, the rule against collateral attack is not applicable. 30A Am.Jur., Judgments, § 849.

If the Union has standing to prosecute the petition for review in No. 5, it cannot collaterally attack in No. 6 the Referee's order entered in the bankruptcy case. On the other hand, if the Union has no standing to prosecute the petition in No. 5, the collateral attack rule does not preclude it from maintaining No. 6. Since both No. 6 and No. 5 are pending in the United States District Court for the Harrison Division of the Western District of Arkansas and are on the docket of the same judge, it really makes no difference whether the basic question presented by the litigation is decided in one case or whether it is decided in the other. Even if it be assumed that No. 6 should be dismissed as contended by the trustee, the ultimate view which the Court takes of the case prompts it to allow both cases to remain on the docket and to decide the basic question within the framework of both.

On the merits the question for decision is as to the *power* of the Bankruptcy Court to deal under section 70b with a collective bargaining agreement.[5] The Court is not asked in either No. 6 or No. 5 to determine whether, as a matter of judgment or discretion, the particular contract between the Carpenters Union and Turney should have been rejected as unduly burdensome upon or disadvantageous to the bankrupt estate.

■■ There is no question that during the life of a collective bargaining agreement it is an "executory contract" and falls within the literal language of section 70b. The Union does not contend otherwise, nor does the Union question the proposition that in general a trustee in bankruptcy may at his option adopt or reject an executory contract. The position of the Union is that federal legislation in the field of labor relations has so preempted the field as to take collective bargaining agreements out of the scope of section 70b. To put it another way, the Union contends that if a bankruptcy receiver is to operate the business of the bankrupt at all, he must do so subject to the terms and provisions of any existing collective bargaining agreement entered into by the bankrupt prior to adjudication.

4. While the Court finds it unnecessary to decide whether a labor union is a "person aggrieved" by an order of a Referee rejecting a collective bargaining agreement, the Court rather suspects that it is. Attention is called to the fact that in International Chemical Workers Union v. Planters Manufacturing Co., N.D.Miss., 259 F.Supp. 365, it was held that a union was a "person aggrieved" so as to have standing to join with its members in suing an employer to enjoin alleged illegal employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.

5. It will have been observed that the contract involved in this case was rejected initially by the receiver rather than by a trustee. No point is made of that fact, and the Court does not consider it to be material. While section 70b does not in terms give a "receiver" as contrasted to a "trustee" any power to adopt or reject an executory contract, it appears that with the approval of the Bankruptcy Court, a receiver has the same option to accept or reject such a contract that a subsequently elected trustee possesses. 4A Collier, op. cit. ¶70.42, n. 4, pp. 503–504; Green v. Finnigan Realty Co., 5 Cir., 70 F.2d 465; Meehan v. King, 1 Cir., 62 F.2d 435; cf. Summe v. Chapman Dairy Co., 8 Cir., 238 F.2d 3, and 4A Collier, op. cit. ¶70.43 [5], p. 528.

■ Federal labor policy, expressed in both statutes and judicial decisions, strongly favors collective bargaining and the specific enforcement of collective bargaining agreements. Further, that policy favors arbitration over conventional judicial procedures in settling labor disputes and preventing strikes and lockouts. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; United Steelworkers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409; United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

Those cases establish the specific enforceability of arbitration provisions in collective bargaining agreements. Such provisions have been enforced uniformly by the federal courts sitting in this State. United Furniture Workers of America, A.F.L.-C.I.O., Local No. 395 v. Virco Manufacturing Corp., E.D.Ark., 257 F.Supp. 138; Glass Bottle Blowers Association of the United States and Canada, A.F.L.-C.I.O., and Local Union No. 131 v. Arkansas Glass Container Corporation, E.D.Ark., 183 F.Supp. 829; International Union of Operating Engineers (A.F.L.-C.I.O.), Local No. 381 v. Monsanto Chemical Co., W.D.Ark., 164 F.Supp. 406; cf. Couch v. Prescolite Manufacturing Co., W.D.Ark., 191 F. Supp. 737.

■ Federal jurisdiction to enforce a collective bargaining agreement is not lost merely because the employer may have ceased to operate or to engage in operations affecting interstate commerce. United Furniture Workers, A.

F.L.-C.I.O. v. McCoy-Couch Furniture Manufacturing Co., E.D.Ark., 223 F. Supp. 880. And a successor employer may be bound by a labor contract entered into by an original employer. John Wiley & Sons, Inc. v. Livingston, supra; Wackenhut Corporation v. International Union, United Plant Guard Workers of America, 9 Cir., 332 F.2d 954; United Steelworkers of America v. Reliance Universal, Inc. of Ohio, 3 Cir., 335 F.2d 891.[6]

While the cases above cited are certainly helpful to the Union in this case up to a point, they do not go so far as to hold that an operating trustee in bankruptcy is required, as the Union contends, automatically to accept and abide by the terms and conditions of a collective bargaining agreement which he inherits from the bankrupt employer. Nor is that proposition established by the fact that it has been held that an operating trustee in reorganization can be guilty of an unfair labor practice within the jurisdiction of the National Labor Relations Board. NLRB v. Bachelder, Receiver, 7 Cir., 120 F.2d 574; In re American Buslines, D.C.Neb., 151 F. Supp. 877; cf. Walling v. Black Diamond Coal Mining Co., W.D.Ky., 59 F. Supp. 348; see also section 272 of the Bankruptcy Act relating to the rights of employees of debtors to engage in labor union activities.

It is clear that to uphold the contention of the Union would imply a conflict between federal legislation in the labor relations field, on the one hand, and the Bankruptcy Act, on the other hand. The Court does not believe that any such conflict exists if the two bodies of legislation are read together and properly construed.

The National Labor Relations Act was adopted in 1935. The Chandler Bankruptcy Act was passed in 1938; in that

6. In Reliance Universal, supra, it was held that a successor employer would be required to submit to arbitration; however, it was pointed out that the award of the arbitrator might be affected by changed conditions resulting from the change in ownership of the business.

Act the power of a trustee to reject an executory contract was first spelled out in the statute; however, long prior to the passage of the 1938 statute the existence of such power of a trustee had been well established by judicial decision. 4A Collier, op. cit., ¶ 70.43[1], pp. 518–519; Greif Brothers Cooperage Co. v. Mullinix, 8 Cir., 264 F. 391. The Taft-Hartley Act was adopted in 1947. Section 70 of the Bankruptcy Act was amended in certain respects in 1950 and again in 1952.

Neither the labor legislation of the Congress nor the Bankruptcy Act contains any language which would generally exclude collective bargaining agreements from the operation of section 70b. Had Congress desired that there be such general exclusion, it would surely have said so.

The absence of such exclusionary language gains added significance, in the Court's estimation, when it is observed that section 77n of the Bankruptcy Act, which deals with the reorganization of certain common carriers, specifically prohibits the bankruptcy courts from interfering with collective bargaining agreements involving carriers the employees of which are subject to the provisions of the Railway Labor Act, 45 U. S.C.A. §§ 151–163 and 181–185. See In re Overseas National Airways, Inc., E. D.N.Y., 238 F.Supp. 359, applying section 77n to a collective bargaining agreement between an airline and its stewardesses. It is also to be observed that section 272 of the Bankruptcy Act prohibits the bankruptcy courts, trustees or debtors in reorganization from interfering with individual employee rights to join unions but says nothing about the power of a bankruptcy court to deal with a collective bargaining agreement under section 70b.

The Court's conclusion is that section 70b is applicable to a collective bargaining agreement, and that the trustee has a right to reject such an agreement just as he has a right to reject any other executory contract. This does not imply by any means that an operating trustee can continue to operate the business of the bankrupt without regard to the requirements of the National Labor Relations Act. The Court does not say that the trustee can operate without regard to the rights of employees to organize and bargain collectively; those rights would seem to be expressly protected by section 272 of the Bankruptcy Act which has been mentioned.

If a union representing employees demands that a new contract be negotiated, it would appear that the trustee must negotiate, and if he refuses to do so, he may be guilty of an unfair labor practice.[7] If a new contract is agreed upon, it may or may not be identical or similar to the original agreement, and the wages and working conditions which have prevailed between the time of the rejection of the old contract and the negotiation of the new one may or may not have a bearing on the provisions of the new contract.

In the course of the hearing on the application for temporary relief in No. 6 counsel for the Union stated that this case is an unusual one. The Court agrees and will add that this litigation seems to be the first instance in which a court has been called upon to determine whether section 70b applies to a collective bargaining agreement. At least the Court has seen no reported decision passing upon the status of a labor contract in a straight bankruptcy proceeding, as opposed to a proceeding under Chapter X or Chapter XI. And the problem seems to have arisen but seldom in proceedings commenced under those Chapters. What authority there is supports the view which the Court takes here.

---

7. Up to this time at least, the Union has not called on the trustee to negotiate a new contract. The Union has simply insisted that the trustee is bound by the old contract, including its provisions relating to grievances and arbitration of disputes.

Section 116 of the Bankruptcy Act authorizes a judge in a proceeding for corporate reorganization to permit the rejection of executory contracts of the debtor, and it has been recognized that the right to reject extends to collective bargaining agreements. 6 Collier, op. cit., ¶ 3.23, pp. 572–573, n. 32 and authorities there cited, notably In re Public Ledger, E.D.Pa., 63 F.Supp. 1008.[8]

Section 313 of the Bankruptcy Act allows the Court in an arrangement proceeding under Chapter XI to permit the rejection of executory contracts upon notice to the parties and to other parties in interest. It has been held that this power extends to a collective bargaining contract. In re Klaber Brothers, Inc., S.D.N.Y., 173 F.Supp. 83.

If a collective bargaining agreement can be rejected in a Chapter X or a Chapter XI proceeding, both of which contemplate rehabilitation and continued operation of the business of the debtor, the Court sees no reason why such an agreement cannot be rejected under section 70b in a straight bankruptcy proceeding which does not contemplate anything other than the liquidation of the bankrupt's business within a comparatively short period of time. Indeed, it is arguable that there is more reason for permitting a rejection of a collective bargaining contract in a straight bankruptcy proceeding than in a proceeding under the other Chapters of the Act to which the Court has referred.

A decree will be entered dismissing the complaint in No. 6 with prejudice. In No. 5 an order will be entered dismissing the petition for review without prejudice to the right of the Union to demand that a new contract be negotiated. If the Union or any individual employees have any monetary claims against the bankrupt, those claims may be processed in the bankruptcy proceeding.

---

8. That case was reversed on appeal, In re Public Ledger, 3 Cir., 161 F.2d 762, but the reversal did not question the power of the reorganization court in a proper case to authorize the rejection of a labor contract. See also In re Mamie Conti Gowns, Inc., S.D.N.Y., 12 F.Supp. 478.