**SHOPMEN'S LOCAL UNION NO. 455, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL-CIO, Appellant,**

v.

**KEVIN STEEL PRODUCTS, INC., Appellee.**

**No. 73 B 909.**

United States District Court, S. D. New York, Bankruptcy Division, Aug. 1, 1974.

Sipser, Weinstock, Harper & Dorn, New York City, for appellant by I. Philip Sipser, Belle Harper, Jerome Tauber, New York City, of counsel.

Guazzo, Silagi & Craner, P. C., New York City, for appellee by Mitchel B. Craner, Stephen E. Klausner, New York City, of counsel.

NLRB, Intervenor by Abigail Cooley, Asst. Gen. Counsel for Special Litigation, Washington, D. C.

### OPINION

WHITMAN KNAPP, District Judge.

Shopmen's Local Union No. 455 appeals pursuant to Bankruptcy Rules 801 et seq. from a decision of Bankruptcy Judge Schwartzberg permitting the debtor in possession pursuant to 11 U.S. C. § 713(1) to reject their collective bargaining agreement. We granted permission to the NLRB to intervene on appellant's behalf. Despite the evident care, fairness and thoroughness with which the proceedings below were conducted, and despite our agreement with most of the resulting findings, we are constrained to reverse.

The facts as found by the Bankruptcy Judge establish in substance that the debtor is a company engaged in the steel fabricating business and obtains jobs by competitive bidding against a variety of other firms in the upstate area.

Local 455 first organized the company in 1968 and obtained a collective bargaining agreement effective through June 30, 1970, at which time a second such agreement was entered into to run through June 30, 1973.

Labor relations in the company deteriorated in early 1973. On February 15, 1973 the shopmen in the plant struck in protest of the company's failure to comply with its pension fund obligations. The company complied and the strike ended one week later, but the company refused to call the shopmen back to work.

Thereafter negotiations ensued for a new collective bargaining agreement to take effect July 1, 1973. Events during this period led to the company's refusal to execute the new contract which had been agreed to in substance and tendered to it by Local 455 on June 1, 1973. Accordingly on June 11, 1973 Local 455 filed unfair labor practice charges with the NLRB. A hearing on the complaint issued by the Board in response to these charges was held that August.

On September 13, 1973, prior to a decision upon the Board hearing, the company filed with Judge Schwartzberg a petition for an arrangement under Chapter XI of the Bankruptcy Act.

By opinion dated November 21, 1973, NLRB Administrative Law Judge Sherman ruled, upon the evidence taken the preceding August, that the debtor company had committed unfair labor practices and ordered it to execute the collective bargaining agreement that had been agreed to with Local 455 on June 1, 1973. Judge Sherman further ordered that the agreement be given retroactive effect to July 1, 1973, and that the debtor make whole its employees with respect to any damage suffered by them because of the absence of a contract since July. In addition, Judge Sherman deferred for future clarification resolution of the status of the shopmen discharged after the February 15 strike, but did find unlawful the refusal to rehire some of them.

The debtor did not comply with the order of the Administrative Law Judge. Instead on January 8, 1974 it filed its petition for permission to reject the collective bargaining agreement it had been ordered to execute and honor. On March 1, 1974, Bankruptcy Judge Schwartzberg granted the debtor's petition. On March 8th the NLRB affirmed Administrative Law Judge Sherman's Order.

This appeal thus squarely presents the question of how to reconcile the conflicting policies embodied respectively in the National Labor Relations Act and in the Bankruptcy Act or, if such reconciliation should be impossible, the question of which policy is here to prevail.

Such question is squarely presented because we agree with Judge Schwartzberg's finding that the collective bargaining agreement—all things being equal—is sufficiently burdensome and onerous to the debtor to warrant its rejection under 11 U.S.C. § 713. We find quite beside the point the argument of appellant and the NLRB that every employer considers onerous its collective bargaining agreement but is nevertheless required to honor it. That argument overlooks the salient fact that this employer has been found to be suffering financial distress sufficient to justify a Chapter XI petition and the relief from onerous obligations that such chapter was designed to provide.

We are thus faced with two important policy decisions adopted by the Congress which in this case come into square conflict. The Bankruptcy Law provides that wherever necessary to preserve solvency the Bankruptcy Court may relieve a debtor from the burdens of any executory contract. The National Labor Relations Act, on the other hand, provides that no collective bargaining agreement can be set aside except pursuant to the provisions of that law, which provisions were concededly not followed in the case at bar.

In concluding that the Congress intended bankruptcy policy to prevail, the Bankruptcy Judge followed such authority as there seems to be on the subject. In re Klaber Bros. Inc. (S.D.N.Y.1959) 173 F.Supp. 83; Business Supplies Corp. of America (S.D.N.Y.1973) 73 B 70, 72 LC § 13, 940; Carpenters Local Union No. 2746 v. Turney Wood Products, Inc. (D.C.Ark.1968) 289 F.Supp. 143; Durand v. NLRB (W.D.Ark.1969) 296 F.Supp. 1049; In Re Public Ledger (E.D.Pa.1945) 63 F.Supp. 1008, rev'd on other grounds (3 Cir.) 161 F.2d 762; In Re Mamie Conti Gowns Inc. (S.D.N.Y. 1935) 12 F.Supp. 478. However, the NLRB did not have an opportunity to present its views to any of the courts who made the decisions just cited, and we find outselves persuaded by the arguments that the NLRB presented to us that its contrary view should prevail.

In the first place both NLRB and the debtor place great stress upon the circumstance that the Bankruptcy Act *specifically* immunizes Railway Labor Act collective bargaining agreements from its reach, and is silent with respect to other labor agreements (cf. In Re Overseas National Airways, Inc. (E.D.N.Y. 1965) 238 F.Supp. 359.) Debtor contends that this difference is expressive of a considered legislative decision to treat the two differently. The NLRB, on the other hand, urges that the inclusion of the railway act exception indicates an expression of policy with respect to labor agreements, while the failure to include a similar exception with respect to labor in general is explainable as legislative oversight.

Although the legislative history can probably be read as supporting any desired result, we are on balance persuaded of the soundness of the NLRB's view. In the last analysis it seems more logical to assume that the Congress intended to distinguish collective bargaining agreements as a class from all other contracts than that it intended to make seemingly irrelevant distinctions between different kinds of labor agreements. Cf. John Wiley & Sons v. Livingston (1963) 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; United Steelworkers v. Warrior & Gulf

Navigation Co. (1960) 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

We accordingly do not reach the question of whether the Bankruptcy Judge erred in finding that because the debtor no longer has union members in its employ, no valuable rights would be jeopardized by the rejection of its contract with the union.

We are advised that the NLRB has petitioned the Court of Appeals for enforcement of its order of March 8. It would seem that such petition raises precisely the same question as here involved, and that it would therefore be appropriate to take steps to consolidate any appeal from this order with that petition.

The order of the Bankruptcy Judge is reversed. The effect of this order is stayed for a period of fifteen days to permit the perfection of an appeal to the Court of Appeals; any application for a further stay to be made to that Court.

So ordered.