WALLACE, Circuit Judge:
 

 This appeal requires us to address tensions between the language and underlying policies of the Bankruptcy Act and the National Labor Relations Act (NLRA). The district court upheld the decision of the bankruptcy judge relieving Hotel Circle,
 
 *212
 
 Inc. (Hotel Circle) from the obligations of a collective bargaining agreement with Local Joint Executive Board, AFL-CIO (Union).
 
 Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc.,
 
 419 F.Supp. 778 (S.D.Cal.1976). The Union alleges that the district court erred in defining the scope of section 313(1) of the Bankruptcy Act, 11 U.S.C. § 713(1), which allows the bankruptcy court to permit rejection of executory contracts of the debtor, and erred in holding that a bankruptcy receiver lacks authority to assume unilaterally or enter into long-term collective bargaining agreements. We affirm.
 

 I
 

 On October 10,1974, Hotel Circle filed for protection under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701
 
 et seq.
 
 After the Chapter XI petition was filed, the business was operated by the debtor in possession until a receiver was appointed on July 21, 1975. During this time, Hotel Circle continued to operate under a 1973 collective bargaining agreement between it and the Union, which was scheduled to expire in 1977. Hotel Circle was a member of the Restaurant-Hotel Employers’ Council (Council), the multi-employer group which had negotiated the 1973 agreement. After its appointment, the receiver sent a representative to participate in discussions between the Council and the Union on the subject of modifying and extending the agreement. On August 18,1975, the receiver’s representative was among those who voted to accept a proposed wage increase and to extend the life of the existing agreement. Although not expressly indicating that he was bound by the renegotiated contract, the receiver paid the hotel’s employees in accordance with the higher wage scale of the new agreement.
 

 In the meantime, the receiver negotiated a proposed sale of the Le Baron Hotel, which sale was conditioned on the purchaser taking clear of any existing collective bargaining agreement. In December 1975 the receiver applied for an order authorizing sale of the hotel, and the Official Creditors’ committee filed a motion seeking to reject various executory contracts, including the collective bargaining agreement between the Council and the Union. On December 15, 1975, the bankruptcy court authorized the sale of the hotel, and on January 6, 1976, the court issued an order rejecting the collective bargaining agreement.
 

 The Union contends that the district court erred on several grounds in sustaining the decision of the bankruptcy judge allowing rejection of the agreement. First, it contends that the rejection provision of Chapter XI of the Bankruptcy Act, section 313(1), 11 U.S.C. § 713(1), should properly be read as excluding collective bargaining agreements because of their unique nature and the policies underlying the labor laws. Second, assuming the bankruptcy court may allow rejection of a collective bargaining agreement, the Union contends that the receiver had authority to affirm the agreement, thereby binding the estate, and did in fact affirm it by entering into negotiations for its modification and extension and by adopting its terms. The Union claims that the district court erroneously decided this issue because it improperly concluded that a receiver is not an “employer” under the NLRA. Finally, the Union contends that the receiver had authority to, and did in fact, enter into the modified agreement, arguing that this authority stemmed from his order of appointment from the bankruptcy court as well as from his duty to bargain under the NLRA. It also argues that the rejection provision relied on by the bankruptcy court to “reject” the modified agreement does not apply to contracts of the receiver. These contentions will be dealt with in turn.
 

 II
 

 We have never confronted the question whether section 313(1) of the Bankruptcy Act, 11 U.S.C. § 713(1), allowing the rejection of executory contracts of the debt- or, applies to collective bargaining agreements. Acknowledging that the weight of authority is to the contrary, the Union urges us to find that such an agreement is
 
 *213
 
 not an “executory contract” for purposes of section 313(1).
 
 [1]
 
 The Union encourages us to construe the language of the Bankruptcy Act so that it would be consistent with the apparently absolute language of section 8(d) of the NLRA, 29 U.S.C. § 158(d), which requires certain procedures and conditions for the termination or modification of a collective bargaining agreement.
 

 The NLRA should govern, according to the Union, because labor agreements are not ordinary executory contracts, but rather generalized codes for industrial peace.
 
 John Wiley & Sons, Inc. v. Livingston,
 
 376 U.S. 543, 550, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964);
 
 United Steelworkers v. Warrior & Gulf Navigation Co.,
 
 363 U.S. 574, 578-80, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Union argues that the labor law policy of promoting industrial peace and stability for employees,
 
 John Wiley & Sons, Inc. v. Livingston, supra,
 
 376 U.S. at 549, 84 S.Ct. 909, suggests that Congress did not intend to include labor agreements among the “exec-utory contracts” that could be rejected under the Bankruptcy Act. It contends that this interpretation is further bolstered by the inadequacy of the Bankruptcy Act’s remedy of actual damages for rejected contracts. Since many of the benefits of labor agreements are intangible, such agreements do not, according to this argument, lend themselves to damage measurement as would a commercial agreement.
 

 These and other arguments were recently considered by the Second Circuit in
 
 Shopmen's Local 455 v. Kevin Steel Products, Inc.,
 
 519 F.2d 698 (2d Cir. 1975). That court held, consistent with prior district court cases, that section 313(1) applies to labor agreements.
 
 See, e. g., Carpenter’s Local 2746 v. Turney Wood Products, Inc.,
 
 289 F.Supp. 143, 147-50 (W.D.Ark.1968);
 
 In re Overseas National Airways, Inc.,
 
 238 F.Supp. 359, 361 (E.D.N.Y.1965);
 
 In re Klaber Bros., Inc.,
 
 173 F.Supp. 83, 85 (S.D.N.Y.1959). The court in
 
 Kevin Steel
 
 relied in part on the unqualified statutory language of the Bankruptcy Act and on the fact that Congress had previously demonstrated its ability to carve labor agreements out of a general grant of power to reject executory contracts. 519 F.2d at 701-02.
 
 See
 
 Bankruptcy Act § 77(n), 11 U.S.C. § 205(n) (prohibiting bankruptcy court or trustees from changing wages or working conditions of railroad employees except in manner prescribed by Railway Labor Act). At the same time, the court acknowledged that “the issue is not a simple one to be decided only by a literal reading of section 313(1).”
 
 Id.
 
 at 703. Therefore, the Second Circuit examined the policies of the acts in question and determined, correctly we think, that the Bankruptcy Act’s provisions were intended to prevail. The court stated that a debtor in possession or receiver under Chapter XI of the Bankruptcy Act is, in a real sense, not the same entity as the pre-bank-ruptcy company. It is “[a] new entity . with its own rights and duties, subject to the supervision of the bankruptcy court.”
 
 Id.
 
 at 704. The court concluded that this new entity is not a “party” to the existing labor agreement for purposes of the section 8(d) termination restrictions, reasoning that to require the debtor in possession or receiver to assume an outstanding labor contract would place the new entity “in a worse position than a successor employer, who is generally not bound by the existing labor agreement.
 
 See NLRB v. Burns Int’l Security Services, Inc.,
 
 406 U.S. 272, 281-91, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).”
 
 Id.
 

 [2]
 

 
 *214
 
 We recognize, on the one hand, that this analysis is not inexorable and is based on a policy choice which emphasizes the changed status of the debtor in bankruptcy for purposes of analyzing its obligation under 8(d). The Second Circuit has acknowledged that
 
 Kevin Steel
 
 analogized the position of a receiver in bankruptcy to that of a successor employer, and thus reasoned that a receiver is not a “party” to the labor agreement, “for the narrow purpose of resolving otherwise conflicting provisions of the labor and bankruptcy laws.”
 
 Truck Drivers Local 807 v. Bohack Corp.,
 
 541 F.2d 312, 320 (2d Cir. 1976). On the other hand, we are convinced that the analogy to successorship cases in this limited area is valuable, and we agree that it would be anomalous to bind the receiver in reorganization proceedings when a successor employer is not bound.
 
 See NLRB v. Burns Int’l Security Services, Inc., supra,
 
 406 U.S. at 287-88, 92 S.Ct. 1571 (refusing to impose a labor agreement on successor employer in part because to do so might discourage needed transfers of capital). The policy of allowing a new start to a debtor in reorganization proceedings provides an even stronger reason for not automatically imposing the existing labor agreement than does the policy recognized in
 
 Burns
 
 of encouraging the flow of capital.
 

 It is significant that in
 
 Burns
 
 the Supreme Court rejected the argument, analogously made here, that the unique nature of labor agreements and the policy of promoting stability for employees should overcome the corresponding rights and interests of a successor employer. The Court stressed that the cases relied on by the union there involved suits to compel arbitration and reflected “ ‘[t]he preference of national labor policy for arbitration as a substitute for tests of strength before contending forces.’ ”
 
 NLRB v. Burns Int’l Security Services, Inc., supra,
 
 406 U.S. at 286, 92 S.Ct. at 1581 (quoting
 
 John Wiley & Sons, Inc. v. Livingston, supra,
 
 376 U.S. at 549, 84 S.Ct. 909).
 

 Similarly, we conclude that the unique features of labor agreements do not overcome the plain language of the Bankruptcy Act and the policies embodied in Chapter XI proceedings. While we recognize that important employee interests are at stake when rejection of a labor agreement is considered, the policies of the Bankruptcy Act are designed to assist failing businesses, a goal in which employees ultimately have a stake as well. We do not believe that the power to reject labor agreements found to be onerous and burdensome to the debtor’s estate is inconsistent with the policies of the labor laws.
 
 [3]
 

 Ill
 

 We now consider the contention that the receiver prevented the subsequent rejection of the collective bargaining agreement when he affirmed the contract and thereby
 
 *215
 
 bound the estate. First, we put to one side a sub-issue which we do not believe is dis-positive of the main, question. The Union contends that the district court failed to confront the tension between the NLRA and the Bankruptcy Act on this question because it misconstrued the status of a receiver under the labor laws. Relying on the
 
 Kevin Steel
 
 conclusion that a receiver is a new entity which is not a “party” to a labor agreement for section 8(d) purposes, the district court went on to conclude that “[t]he bankruptcy entity is not an employer within the meaning of the National Labor Relations Act unless the entity becomes a party to the collective bargaining agreement.”
 
 Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc., supra,
 
 419 F.Supp. at 785. The Union points to cases holding that receivers are employers under the labor laws and, as such, are liable for unfair labor practices and are obligated to bargain under the Act.
 
 In re American Buslines,
 
 151 F.Supp. 877, 882 (D.Neb.1957);
 
 NLRB v. Baldwin Locomotives Works,
 
 128 F.2d 39, 43 (3d Cir. 1942);
 
 NLRB v. Bachelder,
 
 120 F.2d 574, 576 (7th Cir.),
 
 cert. denied,
 
 314 U.S. 647, 62 S.Ct. 90, 86 L.Ed. 519 (1941). As the Union observes,
 
 Kevin Steel
 
 also recognized that the new entity of a bankruptcy reorganization proceeding must comply generally with the NLRA.
 
 Shopmen’s Local 455 v. Kevin Steel Products, Inc., supra,
 
 519 F.2d at 704.
 

 While we agree that a receiver has the general duty to bargain and otherwise comply with the NLRA, we are not persuaded that the receiver’s status as an employer is dispositive of the issue as to his authority to adopt a collective bargaining agreement. The receiver’s duty to bargain does not imply that he possesses all of the powers and responsibilities of a regular employer. Nor does it change the fact that he is an officer of the bankruptcy court possessing limited, strictly construed authority.
 
 See, e. g., Chicago Deposit Vault Co. v. McNulta,
 
 153 U.S. 554, 561, 14 S.Ct. 915, 38 L.Ed. 819 (1894). Therefore, the fact that he has such a duty does not answer the question whether he may adopt a collective bargaining agreement without seeking the approval of the court.
 

 We are compelled to reject the district judge’s conclusion that a receiver is not an employer under the NLRA unless he becomes a “party” to the labor agreement, because that reasoning could lead to confusion if applied outside this limited area of agreement adoption. We believe, however, that he accurately considered the legal authorities relating to the power of receivers to assume executory agreements and appropriately reconciled the demands of the bankruptcy and labor acts. We thus read the district court opinion as concluding only that a receiver is not a typical employer under the NLRA insofar as his 8(d) duty to bargain is limited by his lack of legal authority to affirm an executory labor agreement without the permission of the bankruptcy court.
 
 Cf. Truck Drivers Local 807 v. Bohack Corp., supra,
 
 541 F.2d at 320 (observing that the statement that the debtor is not a “party” cannot be taken literally since one not a party technically cannot affirm or reject an agreement).
 

 We now address the issue whether the district court was correct in concluding that the receiver lacked authority to bind the debtor’s estate by affirming the contract. We begin with the basic principles that the “order authorizing the receiver to operate the business does not, in itself, confer unlimited authority to operate the . [hjotel,”
 
 Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc., supra,
 
 419 F.Supp. at 786 (quoting 8 Collier on Bankruptcy ¶ 6.35[8], pp. 961-65 (14th ed. 1976)), and that “[pjarties dealing with a receiver are charged with knowledge of the extent of any restrictions upon his authority.”
 
 Id.
 
 (citing
 
 In re Yellow Transit Freight Lines,
 
 207 F.2d 602, 606 (7th Cir. 1953)). As the receiver’s order of appointment by the bankruptcy court does appear to grant any unusual authority, the question here is essentially one of law and not of construction of the appointing order.
 

 While neither we nor the Supreme Court has passed on the question before us, the more persuasive cases from other jurisdic
 
 *216
 
 tions hold that “ ‘[assumption or adoption of the contract can only be effected through an express order of the [bankruptcy] judge.’ ”
 
 In re American National Trust,
 
 426 F.2d 1059, 1064 (7th Cir. 1970) (quoting 6 Collier on Bankruptcy ¶ 3.23[5], p. 578 (14th ed. 1976)).
 
 See also Texas Importing Co. v. Banco Popular de Puerto Rico,
 
 360 F.2d 582, 584 (5th Cir. 1966). The basic reasoning for this view is expressed by Collier:
 

 The general rule that economy of administration calls for close, strict, and active control by the court of all administrative expenditure seems to lead to the conclusion that it is improper for a trustee to assume executory contracts on his own responsibility.
 

 4A Collier on Bankruptcy ¶ 70.43[5], at 531 (14th ed. 1976). Similarly, we have expressed the view that “[i]t is well settled bankruptcy law that on important decisions, whatever their character, the trustee must get the court’s approval . . .”
 
 Newport v. Sampsell,
 
 233 F.2d 944, 946 (9th Cir.),
 
 cert. denied,
 
 352 U.S. 942, 77 S.Ct. 264, 1 L.Ed.2d 238 (1956).
 

 Indeed, as the bankruptcy court is vested with exclusive jurisdiction over the property of the debtor, we believe its authority to allow rejection of burdensome contracts gives it a needed flexibility that should not be relinquished except by the court. Therefore, we agree with the Fifth Circuit that the Act should not be construed to grant the trustee or receiver authority to “bar the court from exercising its statutory power to authorize the rejection of such a contract . . .”
 
 Texas Importing Co. v. Banco Popular de Puerto Rico, supra,
 
 360 F.2d at 584. This concern for needed flexibility is particularly compelling as against the Union’s contention that the receiver should be viewed as having affirmed the contract when he knowingly conforms to its terms.
 
 See Pacific Western Oil Co. v. McDuffie,
 
 69 F.2d 208, 213 (9th Cir.),
 
 cert. denied,
 
 293 U.S. 568, 55 S.Ct. 79, 79 L.Ed. 667 (1934) (recognizing the receiver’s need to be able to conform to the terms of an existing contract experimentally while deciding whether the contract should be rejected or affirmed).
 

 It should come as no surprise that there is conflicting authority on this issue since the power to assume executory contracts is not found in the Act, but rather is inferred from the bankruptcy court’s power to approve rejection of such agreements. 8 Collier on Bankruptcy ¶ 315[6], at 204-05 (14th ed. 1976). Some courts have recognized a receiver’s right to affirm executory contracts, relying upon precedent from preBankruptcy Act reorganization under equity, in which receivers had that authority.
 
 E. g., In re Public Ledger, Inc.,
 
 161 F.2d 762 (3d Cir. 1947). This practice, in turn, has been criticized on the ground that the Bankruptcy Act is intended to involve “a higher degree of judicial supervision and responsibility.” 4A Collier on Bankruptcy ¶ 70.43, at 531-32 n.30b. We are in accord with the latter view and agree with the district court that “[t]he assumption or rejection of executory agreements affects the outcome of the chapter proceeding and should proceed under the supervision of the court.”
 
 Local Joint Executive Board, AFL-CIO
 
 v.
 
 Hotel Circle, Inc., supra,
 
 419 F.Supp. at 787.
 

 The Union relies primarily on
 
 In re Public Ledger, Inc., supra,
 
 161 F.2d 762, which held that a receiver or trustee has authority to assume a labor agreement without seeking the approval of the bankruptcy court and may do so by knowingly conforming to its terms.
 
 Id.
 
 at 767. The case involved an employee’s claim for vacation pay that had accrued under a collective bargaining agreement entered into prior to the outset of bankruptcy proceedings. Trustees had paid wages according to the terms of the agreement, but the bankruptcy court denied claims for vacation pay on the ground that it had never approved assumption of the agreement. The Third Circuit stated that “[i]t is unreasonable to assume that the [bankruptcy] court contemplated anything but the continuance of the labor contract as the basis for the continued services of the employees.”
 
 Id.
 
 In addition, the court focused on the equities involved, observing that “the claimant had worked for a year
 
 *217
 
 and was entitled to his vacation pay.”
 
 Id.
 
 at 768.
 

 It appears to us, however, that the court in
 
 Public Ledger
 
 could have ruled on a narrower ground
 
 [4]
 
 and did not adequately consider the implications of granting authority to a receiver or trustee to adopt a long-term collective bargaining agreement. We have not found any cases holding that a receiver or trustee had authority to adopt a long-term collective bargaining agreement that actually bound the debtor’s estate beyond the term of his trust, and, like the district court, we find the reasoning against such authority “even more persuasive if the assumption of an executory contract will bind the estate in the future rather than merely establish a priority as an administrative expense.”
 
 Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc., supra,
 
 419 F:Supp. at 788. Since the equities of cases such as
 
 Public Ledger
 
 can be addressed without granting receivers authority to bind the debtor and without removing needed supervision power and flexibility from the bankruptcy court, we conclude that the receiver lacked authority to adopt the 1973-1977 labor agreement.
 
 [5]
 
 Consequently, the bankruptcy court retained power to authorize rejection of the agreement.
 
 [6]
 

 IV
 

 We address, finally, whether the bankruptcy court could void the new agreement extending and modifying the prebankruptcy contract between Hotel Circle and the Union. This issue turns on whether the receiver was authorized to enter into a long-term collective bargaining agreement.
 
 [7]
 
 Courts do not recognize contracts that exceed the limited authority of a receiver,
 
 In re Avorn Dress Co.,
 
 79 F.2d 337 (2d Cir. 1935), and parties dealing with a receiver are charged with knowledge of his limited authority.
 
 Id.; In re Yellow Transit Freight Lines, supra,
 
 207 F.2d at 606. Courts generally will not retroactively validate contracts which exceeded the authority of the receiver.
 
 In re Avorn Dress Co., supra,
 
 79 F.2d 337;
 
 Local Joint Executive Board, AFL-CIO
 
 v.
 
 Hotel Circle, Inc., supra,
 
 419 F.Supp. at 790 & n.2.
 

 The Union contends, however, that the receiver possessed authority to enter into the new contract. It argues that we should read the language of the receiver’s order of appointment together with the re-
 
 *218
 
 ceiver’s duty to bargain under the labor laws to find that he had such authority. The order of appointment authorizes the receiver to “enter into any contracts incidental and usual to the operation of said business and the management and preservation of said property.” The Union contends that a labor agreement is “incidental and usual” to the operation of a hotel, and it argues that receivers will be unable to secure the labor needed to operate the business if they are unable to enter into such agreements. In most respects, their arguments here parallel those discussed earlier in which they contended that receivers may unilaterally assume existing agreements. We reject these arguments for basically the same reasons.
 

 We first examine the language of the order of appointment. The Union emphasizes that long-term collective bargaining agreements are typical in the hotel industry, suggesting that this makes them “incidental and usual.” We believe that the phrase “incidental and usual” has a more restrictive meaning, and that it refers to contracts necessary to the daily operation of the business. As stated by the Supreme Court:
 

 It is undoubtedly true that a receiver, without the previous sanction of the court may incur ordinary expenses or liability for supplies, material, or labor needed in the daily administration of property committed to his care as an officer of the court; but it seems equally well settled that the courts decline to sanction the exercise of this discretion on the part of receivers in respect to large outlays, or contracts extending beyond the receivership, and intended to be binding upon the trust.
 

 Chicago Deposit Vault Co. v. McNulta, supra,
 
 153 U.S. at 561, 14 S.Ct. at 918.
 
 Cf. Newport v. Sampsell, supra,
 
 233 F.2d at 946 (it is settled that the trustee must get the court’s approval on all important decisions).
 

 We are not persuaded that the relevant case law justifies a different result in the case of long-term collective bargaining agreements. The most illustrative example of a court sanctioning a receiver or debtor in possession entering into a labor agreement is
 
 In re Wil-Low Cafeterias, Inc.,
 
 111 F.2d 429 (2d Cir. 1940). In that case, much as in
 
 In re Public Ledger, Inc.,
 
 discussed earlier, employees sought to obtain accrued vacation pay that had been denied by the trustee on grounds that the debtor’s post-bankruptcy contract was invalid as beyond the authority granted the debtor in possession by the bankruptcy court. We agree with the district judge that the court in
 
 Wil-Low
 
 recognized the agreement “for the purpose of awarding benefits accrued under the contract,”
 
 Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc., supra,
 
 419 F.Supp. at 786, and we would apply the same analysis developed in our discussion of
 
 In re Public Ledger, Inc.
 
 Indeed,
 
 Wil-Low
 
 appears to acknowledge the limitation we are recognizing as the court specifically reserved the question whether the debtor in possession could have bound the estate in the future without permission of the court: “It may be that the court would have had the power to rescind such a contract so far as it remained unperformed, but no such thing was attempted.”
 
 In re Wil-Low Cafeterias, Inc., supra,
 
 111 F.2d at 431.
 

 We conclude, therefore, that the district court was correct in deciding that “[t]he order authorizing the receiver to continue to operate the business of the debtor, did not grant the receiver the authority to enter into . the modified collective bargaining agreement . ..”
 
 Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc., supra,
 
 419 F.Supp. at 791. This conclusion is unaffected by the receiver’s status as an employer under the labor laws and his corresponding duty to bargain. The receiver is required to retain any grievance machinery to process employee disputes, and he is obligated to meet and confer with the employee bargaining representative as required by section 8(d). Nevertheless, his section 8(d) duties are limited to the extent that he cannot enter into a long-term collective bargaining agreement without obtaining the permission of the bankruptcy court.
 

 
 *219
 
 It may at first glance seem harsh to allow the debtor relief from the contract entered into and relied upon by the Union. We have already observed, however, that parties dealing with an officer of the bankruptcy court are assumed to know the limits of his authority. In addition, it is not as though a union is without an option in such cases. Both with reference to adoption of an existing agreement as well as the negotiation of a new one, a union may insist upon obtaining the authorization of the bankruptcy court.
 
 See Texas Importing. Co. v. Banco Popular de Puerto Rico, supra,
 
 360 F.2d at 584-85;
 
 Philadelphia Co. v. Dipple,
 
 312 U.S. 168, 174, 61 S.Ct. 538, 85 L.Ed. 651 (1941). Unions should be on notice that court approval is required if a long-term collective bargaining agreement, with potential for binding the estate beyond the term of a receivership, is to be affirmed or validly entered into by the parties.
 

 AFFIRMED.
 

 [1]
 

 . The section provides:
 

 Upon the filing of a petition, the court may,
 

 (1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate.
 

 [2]
 

 . In
 
 Kevin Steel,
 
 the court also addressed the argument, not presented to us, that businesses will enter bankruptcy proceedings to free themselves of labor agreements.
 
 Shopmen’s Local 455 v. Kevin Steel, Inc., supra,
 
 519 F.2d at 705-06. Our decision does not reach the issue but leaves room for a later determination whether, when the debtor is in bad faith, the agreement is therefore not onerous or burdensome.
 
 See In re Mamie Conti Gowns, Inc.,
 
 12 F.Supp. 478, 480 (S.D.N.Y.1935).
 

 We also do not need to address the question whether the bankruptcy court should apply a
 
 *214
 
 stricter standard for authorizing the rejection of collective bargaining agreements as a means of reconciling the policies of the labor and bankruptcy laws.
 
 Compare Shopmen's Local 455 v. Kevin Steel Products, Inc., supra,
 
 519 F.2d at 706-07,
 
 with Local Joint Executive Board AFL-CIO v. Hotel Circle, Inc., supra,
 
 419 F.Supp. at 789.
 

 [3]
 

 . In some cases the bankruptcy court will not need to reach the rejection issue. For example, if an extension of an old contract or a new contract does not receive approval of the bankruptcy court, the new employer would not be bound by it, e.
 
 g., NLRB
 
 v.
 
 Burns Int’l Security Services, Inc.,
 
 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), and that might well be dis-positive of the case. That determination would be based upon whether or not the remaining time of the old contract, here from 1975 to 1977, needs to be rejected in order to fulfill the purposes of the Bankruptcy Act. Under
 
 Burns
 
 and other cases, there may not be a need for the bankruptcy court to act any further as the new owner may be insulated under the successor employer doctrine.
 
 E. g., id.
 
 On the other hand, in some circumstances a new employer may have the responsibility to arbitrate over provisions in the old contract arguably intended to be given continuing effect.
 
 See John Wiley & Sons, Inc. v. Livingston,
 
 376 U.S. 543, 552-55, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Whether such concerns are present, and whether the bankruptcy court therefore reasonably believes that a rejection order is necessary as a condition of the new employer purchasing the old company, must be determined on a case-by-case basis. Here we cannot say that the bankruptcy court was in error when it considered that there was a need to reject the remaining part of the whole contract.
 

 [4]
 

 .In
 
 In re Schenectady Ry.,
 
 93 F.Supp. 67 (N.D.N.Y.1950), for example, the court found that trustees in a Chapter X proceeding were obligated to pay accrued pension benefits, but still concluded that the contract had not been assumed nor could be without court approval. Since the trustee’s order of appointment authorized him to pay the operating expenses of the business, including wages, the court found that the trustee had adopted certain employee benefits, including pensions and vacation pay, as part of those wages when he used the labor contract “as a yardstick or measure of obligations” and knowingly conformed to the agreement’s terms.
 
 Id.
 
 at 69. Although “equitable considerations” required that the pensions be paid as “a part of operating expense during the period that the parties knowingly conform to the terms of the contract,”
 
 id.
 
 at 70, the court still held that the trustee could not adopt the agreement because it “might seriously encumber the assets [of the debtor] without the consent and approval of the Court.”
 
 Id.
 
 at 69.
 
 See also In re Capital Service, Inc.,
 
 136 F.Supp. 430, 437 (S.D.Cal.1955) (finding vacation pay to be an administration expense without reaching assumption question on ground that debtor “rehired the employees at the old rates of pay and under the old terms and conditions of employment”); 4A Collier on Bankruptcy ¶ 70.43[5], at 531 n.30b (14th ed. 1976).
 

 [5]
 

 . Thus, despite the Second Circuit’s persuasive reasoning on the applicability of section 313(1) to labor agreements, we reject their additional conclusion that a receiver may assume an exec-utory contract by conforming to its terms.
 
 See Brotherhood of Railway, Airline and Steamship Clerks v. REA Express, Inc.,
 
 523 F.2d 164, 170 (2d Cir.),
 
 cert. denied,
 
 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975) (relying on
 
 In re Public Ledger, Inc.,
 
 supra).
 

 [6]
 

 . Having concluded that the receiver lacked authority to affirm a long-term collective bargaining agreement, we need not address whether the district court erred in finding that the receiver did not manifest a clear intent to affirm the contract.
 

 [7]
 

 . Like the district court, we do not reach the question whether section 313(1), allowing rejection of executory contracts of “the debtor,” applies to valid contracts of the receiver.