PER CURIAM.
 

 Borman’s, Inc. (Borman) appeals from a district court order affirming a bankruptcy court, 6 B.R. 968, order which permitted Allied Supermarkets, Inc. (Allied) to reject its collective bargaining agreements with three local unions. We affirm.
 

 I
 

 On November 6, 1978, Allied filed a petition for arrangement under Chapter XI of
 
 *188
 
 the Bankruptcy Act.
 
 [1]
 
 During the pendency of the proceedings in the bankruptcy court, Allied was authorized to continue the operation of its business. Allied submitted to the bankruptcy court a comprehensive “Business Plan” which proposed a restructuring of its business in order to improve its chances for survival and a successful arrangement under Chapter XI. A principal element of the plan was the rejection of executory labor contracts
 
 [2]
 
 and renegotia-tions with the affected employees
 
 [3]
 
 through the collective bargaining process. The Business Plan had been approved by the Creditors Committee, an elected oversight group representing approximately 10,000 unsecured creditors to whom Allied owed more than $75,000,000. Allied had also received tentative approval from the affected unions.
 

 On March 26, 1979, the bankruptcy court convened a hearing on Allied’s application to reject the labor contracts. On that day, a Borman representative appeared before the bankruptcy judge and requested permission to intervene on the ground that Borman participated with Allied in a multi-employer bargaining group and would be adversely affected if Allied were permitted to reject the labor contracts. The bankruptcy judge permitted Borman to intervene and rescheduled the hearing on Allied’s application to March 30, 1979, to afford Borman time for discovery.
 

 The bankruptcy judge resumed the hearing on March 30 and heard further evidence on March 31. The evidence indicated that Allied had been incurring substantial losses for a number of years in its supermarket operations. Allied’s Chief Executive Officer testified that Allied’s financial condition was so precarious that only the immediate and full implementation of the proposed Business Plan would permit Allied to remain in business. The termination of Allied’s existing collective bargaining agreements and renegotiation of those contracts with significant concessions by the employees was viewed as crucial.
 
 [4]
 

 All the other interested parties, including the unions, either urged approval of the Business Plan or raised no objection to it, with the exception of two Allied’s Competitors, Borman and Chatham Supermarkets, Inc.
 
 [5]
 
 These two competitors introduced evidence establishing that they participated in a multiemployer bargaining unit known as the United Supermarket Association and that the Association had negotiated a standardized labor contract with the unions which equalized the labor costs for each company. Borman and Chatham contended that Allied could not reject the labor contracts without their approval. In the alternative, they contended that the bankruptcy judge was required to weigh their interests
 
 *189
 
 against the interests of Allied under a strict legal standard.
 

 At the conclusion of the hearings, the bankruptcy judge held that Allied could reject the labor contracts, and the court subsequently approved Allied’s applications. The district court affirmed the judgment of the bankruptcy court, and Borman brought this appeal.
 

 II
 

 On appeal, Borman contends that the bankruptcy court erred in failing to weigh its interests against the interests of Allied and the unions when it considered Allied’s application to reject the labor contracts. We disagree.
 

 As a general rule, a bankruptcy court presented with an application to dis-affirm the obligations of an executory contract need determine only whether it is indeed executory and whether disaffir-mance would be advantageous to the debt- or.
 
 Feldman v. Trans-East Air, Inc.,
 
 497 F.2d 352, 356 (2nd Cir.1974). The burden or hardship which rejection would impose on other parties to such a contract is not a factor to be weighed by the bankruptcy court in ruling upon the debtor’s application.
 
 In re Mammoth Mart,
 
 536 F.2d 950, 954 (1st Cir.1976);
 
 Feldman v. Trans-East Air, Inc., supra;
 
 8 Collier, Bankruptcy ¶3.15[8] (14th ed. 1971).
 

 An exception to this general rule has been recognized by the Second Circuit where the executory contracts which the debtor seeks to reject are collective bargaining agreements.
 
 Brotherhood of Railway, Airline and Steamship Clerks v. REA Express, Inc.,
 
 523 F.2d 164 (2d Cir.),
 
 cert. denied,
 
 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975);
 
 Shopmen’s Local Union No. 455 v. Kevin Steel Products, Inc.,
 
 519 F.2d 698 (2d Cir.1975). In these cases, the court rejected the unions’ argument that the Bankruptcy Act did not permit the rejection of executory labor contracts. However, the court did hold that a decision to allow the debtor to reject an executory labor contract should not be based solely on whether it would improve the financial status of the debtor, but rather should also consider the impact upon employees opposing the application. The court thus sought to resolve the tension between the Bankruptcy Act’s policy in favor of giving the debtor a new start and the National Labor Relations Act’s
 
 [6]
 
 policy of encouraging enforcement of collective bargaining agreements, by permitting the rejection of such an agreement only after a “careful balancing of the equities on both sides.”
 
 Kevin Steel Products, Inc., supra
 
 at 707,
 
 quoting, In re Overseas National Airways,
 
 238 F.Supp. 359, 361 (E.D.N.Y.1965).
 

 Stressing the Second Circuit’s view that “the bankruptcy court must move cautiously in allowing rejection of a collective bargaining agreement,” Kevin
 
 Steel, supra
 
 at 707, Borman contends that the bankruptcy court erred in failing to weigh its interests in determining whether to permit rejection of the labor contracts.
 
 [7]
 
 We disa
 
 *190
 
 gree. Whatever the merits of the “rule” that the courts must judge applications to reject labor contracts by a more stringent standard than applications to reject other executory contracts,
 
 [8]
 
 that rule is inapplicable here.
 
 Kevin Steel
 
 and
 
 REA Express
 
 expressed concerns for the debtor’s
 
 employees
 
 and sought to reconcile § 313 of the Bankruptcy Act with the national labor policy favoring enforcement of collective bargaining agreements. Borman cites no case holding that the interest of a debtor’s
 
 competitor
 
 in holding the debtor to the terms of the labor contract negotiated by the mul-tiemployer bargaining unit is also to be weighed. As a practical matter, the interest of the employees, represented by the unions, and the interest of Borman in the application simply are not comparable. As the district court stated:
 

 The Court has reservations regarding application of the
 
 Kevin Steel
 
 and
 
 REA Express
 
 tests to the facts of this case. Furthermore, even if the rights and interests of Allied’s competitors were to be considered here, the Court would have serious concern about granting these interests any significant weight in comparison with Allied’s interest and the interest of Allied’s employees. Accepting the evidence which was presented to the bankruptcy judge, the direct and primary result of Allied’s inability to reject these contracts is that Allied fails and its employees are jobless. On the other hand, if Allied is allowed to.disaffirm these contracts and it receives certain concessions from its employees in subsequent contract negotiations, Allied’s competitors may indirectly be adversely affected. In such a situation, the Court finds it difficult to conceive of a case in which the equities of the debtor’s competitors could ever overcome the interests of the debtor and the debtor’s employees.
 

 * # * * * #
 

 The Bankruptcy Court did not accord the interests of Allied’s competitors too little weight, for it is the opinion of this Court that under the facts of this unique case, Borman’s and Chatham’s interests were entitled to little or no weight in relation to the crucial and immediate interests of Allied and Allied’s employees.
 

 We agree with the district court that Bor-man’s interest in Allied’s application was insubstantial when compared to the interests of Allied and the unions. Thus, we hold that an employer’s interest in holding another employer to the terms of a. labor contract negotiated by a multiemployer bargaining unit need not be weighed when
 
 *191
 
 passing upon applications to disaffirm exec-utory labor contracts.
 
 [9]
 
 When such objections arise, the general rule which looks only to whether rejection would be advantageous to the debtor is properly applied.
 

 Accordingly, the judgment of the district court is AFFIRMED.
 

 [1]
 

 . This citation, and all others in this opinion, refer to the statutory enumeration prior to the Revised Bankruptcy Act of 1978, 11 U.S.C. § 101,
 
 et seq.
 
 The provisions of the Revised Act do not apply to this case, which was commenced prior to the effective date of the new Act. See 11 U.S.C. Prec. § 101.
 

 [2]
 

 . Allied sought rejection of the labor contract pursuant to § 313(1) of the Act, 11 U.S.C. § 713(1), which provides:
 

 Upon the filing of a petition, the court may, in addition to the jurisdiction, powers, and duties conferred and imposed upon it by this Chapter—
 

 (1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate;
 

 [3]
 

 . The three union locals involved are Retail Store Employees Union Local No. 36, Retail Store Employees Union Local No. 876, and Amalgamated Meat Cutters and Butcher-Workmen of North America Local No. 539 (hereinafter collectively referred to as “the unions”). The Unions have filed a brief as
 
 amici curiae
 
 in this Court urging affirmance of the district court.
 

 [4]
 

 . The bankruptcy court credited this testimony, noting that 65 to 75 percent of Allied’s cost of operation was attributable to the cost of labor. App. 265.
 

 [5]
 

 . Chatham Supermarkets, Inc. (Chatham) participated with Borman and Allied in the mul-tiemployer bargaining group. Chatham joined Borman in opposing Allied’s rejection of the labor contracts in the proceedings before the bankruptcy court and the district court, but Chatham did not appeal from the district court’s order of affirmance.
 

 [6]
 

 . 29 U.S.C. § 151,
 
 et seq.
 

 [7]
 

 . Borman states that the bankruptcy court concluded that no multiemployer bargaining unit existed, and therefore did not recognize that Borman had an interest in Allied’s application. Since the district court did find the existence of a multiemployer bargaining unit, Borman argues that the district court should have remanded the case to permit the bankruptcy court to weigh the equities in the first instance. However, we do not read the bankruptcy court’s bench opinion as turning upon a finding that no multiemployer unit existed. The bankruptcy judge stated as follows:
 

 The relationship, the contract, call it whatever you may, existing between Borman, Allied, and Chatham is under no stretch of the imagination a labor contract. There is no employer-employee relationship between the two. It is not the type of collective bargaining agreement that 313 intended to exempt or give special treatment under Section 313. The type of contract that is entitled to special consideration under Section 313 is the contract or the agreement between the local unions in question here, the collective bargaining and in considering whether or not to reject, to permit rejection or to refuse rejection, the Court must look: Are the contracts executory? Will it be of an advantage to the Debtor, or, put another way, is the contract onerous or burdensome to the Debtor?
 

 
 *190
 
 Or to put it another way, does the existence or the continuance of the contract thwart rehabilitation of the Debtor?
 

 As the next issue, the Court must look and must protect and balance the equities and consider the welfare of the members of the collective bargaining unit.
 

 Putting it another way, to be more specific, what good is this going to do the Debtor in relationship to the harm that it is going to do these people who are members of this collective bargaining agency?
 

 The bankruptcy court clearly was applying the test enunciated in
 
 Kevin Steel.
 
 Its rejection of Borman’s claim turned not on a finding that no multiemployer bargaining unit existed, but rather on its belief that employers participating with the debtor in a multiemployer bargaining unit were not entitled to the “special consideration” which
 
 Kevin Steel
 
 extends to the unions with whom the debtor has signed collective bargaining agreements.
 

 [8]
 

 . The Second Circuit was not the first court to hold that executory labor contracts could be rejected pursuant to § 313 of the Bankruptcy Act; several courts had previously so held.
 
 See e.g., Carpenters Local 2746 v. Turney Wood Products, Inc.,
 
 289 F.Supp. 143, 147-50 (W.D.Ark.1968);
 
 In re Overseas National Airways, Inc.,
 
 238 F.Supp. 359, 361 (E.D.N.Y.1965);
 
 In re Klaber Bros., Inc.,
 
 173 F.Supp. 83 (S.D.N.Y.1959). Only the
 
 Kevin Steel
 
 and
 
 REA Express
 
 decisions, however, suggest that applications to reject executory labor contracts must be more strictly scrutinized than applications to reject other executory contracts. The Ninth Circuit has now also held that § 313 of the Act applies to executory labor contracts.
 
 Local Joint Executive Bd. v. Hotel Circle,
 
 613 F.2d 210, 214 (9th Cir.1980). However, the Ninth Circuit, while citing
 
 Kevin Steel,
 
 did not reach the question “whether the bankruptcy court should apply a stricter standard for authorizing the rejection of collective bargaining agreements as a means of reconciling the policies of the labor and bankruptcy laws.”
 
 Id.
 
 at 213 n. 2. Since here the unions have not opposed Allied’s application, we similarly need not pass upon this question.
 

 [9]
 

 . We note that in
 
 Hotel Circle, supra,
 
 the Ninth Circuit in approving the rejection of executory labor contracts specifically mentioned that Hotel Circle was a member of a multiemployer group which had negotiated the contracts in question. No consideration was given, however, to the harm the other employers might suffer if Hotel Circle was allowed to reject the contracts.
 

 The insubstantiality of Borman’s interests in Allied’s applications becomes even more apparent when one considers that Allied always retained a right to withdraw from the multiem-ployer bargaining unit without the approval of the other employer members. Before the commencement of bargaining an individual member of a multiemployer bargaining unit may withdraw upon timely written notice to the union.
 
 See, e.g., Retail Associates, Inc.,
 
 120 N.L.R.B. 388 (1958). After the multiemployer bargaining unit has commenced negotiations with a union, an individual employer may still withdraw where the union consents,
 
 e.g., Hotel and Restaurant Employees,
 
 240 N.L.R.B. 757, 759 (1979), or where the employer faces “unusual circumstances” such as “evident economic hardship.”
 
 Spun-Jee Corp.,
 
 171 N.L. R.B. 557, 558 (1968). None of these recognized methods of withdrawal requires the approval of the other employer members of the multiem-ployer association. Here Allied both received the consent of the unions and faced extreme economic hardship.