In re John C. **KIRKPATRICK** and Cheryl A. **Kirkpatrick, Debtors.**

**BAKERY, CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL UNION, AFL–CIO–CLC, LOCAL 85, Appellant,**

v.

**John C. KIRKPATRICK and Cheryl A. Kirkpatrick, Appellees.**

**BAP No. EC 81–1399 EVAs.**
**BK No. 181–02863.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Feb. 18, 1983.

Decided Oct. 7, 1983.

Barry J. Bennett, Fresno, Cal., for appellant.

Brett Dorian, Fresno, Cal., for appellees.

Before ELLIOTT, VOLINN and ASHLAND, Bankruptcy Judges.

ELLIOTT, Bankruptcy Judge:

The Bakery, Confectionery and Tobacco Workers International Union, Local 85, appeals from an order approving rejection of its collective bargaining agreement with Kirkpatrick who operates a bakery in Fresno, California.

The issues, as framed by the Union, are: (1) has Kirkpatrick made a sufficient showing that the agreement was onerous and burdensome and (2) should Kirkpatrick be required to show that his rejection of the agreement was not improperly motivated.

## I

On December 4, 1981, Kirkpatrick and his wife filed a chapter 11 petition. The business employed approximately 23 persons at that time. The next day Kirkpatrick announced to the employees that the business would no longer be operating as a union shop. Shortly thereafter a similar announcement was delivered to the Union's business agent. This announcement was followed up by a letter addressed to the Union dated December 12, 1981 purporting to confirm the "rejection" of the contract as of December 5 under the authority of "the option to reject all contracts, including labor" included in chapter 11. The Union had filed a complaint with the NLRB on December 5, 1981 claiming Kirkpatrick's actions amounted to unfair labor practices.

Kirkpatrick then filed a motion in the bankruptcy court to "confirm" the debtor in possession's rejection of the contract. He was able to obtain an order shortening the time of notice on his motion to one day.

The only justification for this shortened notice was his allegation that substantial "conflict and confusion" had arisen involving the question and that "irreparable injury would occur if the question were not resolved at the earliest possible time."

At the hearing, the only evidence was Kirkpatrick's testimony and financial projections prepared by him. His testimony was essentially to the effect that the only way the bakery could stop its losses was to end the contract. Although the projected non-union wages were just as high as under the contract, costly fringe benefit contributions were to be eliminated. As a clearly secondary factor, Kirkpatrick also testified that the removal of contract-imposed work restrictions would permit greater flexibility to operate more efficiently.

Kirkpatrick's testimony and exhibits were the only evidence before the court. That evidence showed continuing losses unless the contract were to be rejected. On the basis of the testimony before it that absent rejection the debtor would lose $9,000 per month, the court ruled that the company would have to close if it was to be bound by the contract. In light of the conclusion that the alternatives were rejection of the contract versus loss of all the jobs due to closure of the business, the court ordered the contract rejected.

## II

The Debtor's initial claim that under Bankruptcy Code § 365(d)(2) he could unilaterally reject his labor contract without court approval is untenable. Code § 365(a) clearly requires court approval. Code § 365(d)(2) does not mitigate this requirement, but merely sets the temporal boundaries of the process of rejection or assumption. Indeed under the Bankruptcy Act of 1898, a serious question persisted for many years as to whether a collective bargaining contract could be rejected at all. Eventually decisions established that notwithstanding the unique status of collective bargaining contracts, they may be rejected under the bankruptcy laws. *See Local Joint Ex-*

*ecutive Board v. Hotel Circle,* 613 F.2d 210, 213 (9th Cir.1980).

But, although the Ninth Circuit has not addressed the standards to be followed by the courts in ruling upon requests for leave to reject collective bargaining agreements, *see id.,* 613 F.2d at 213, n. 2., neither it nor any other court has given any hint that either under the Bankruptcy Act of 1898 or under the present Bankruptcy Code rejection could be accomplished without court permission. In this respect then Kirkpatrick was clearly wrong in assuming he had the right to reject his contract without the court's having first granted him permission after having applied the relevant legal standard.

The Union formulates that standard in terms of onerousness and burdensomeness—criteria that gained meaning under the Bankruptcy Act of 1898. Strictly speaking, the "onerous and burdensome" requirement is not part of the nomenclature of the Bankruptcy Code. In order to justify rejection of an ordinary commercial agreement, it is now generally accepted that, normally, the representative of the estate need only show that in his business judgment, rejection would benefit the estate. *In re Huang,* 23 B.R. 798 (Bkrtcy. App.Pan. 9th Cir.1982). But, all courts of appeals which have passed upon the question have ruled both under the 1898 Act and under the Code that the favored status of the rights of workers requires a more stringent examination of the evidence offered to justify rejection of collective bargaining contracts.

The court in *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698, 704 (2d Cir.1975), construing the Bankruptcy Act of 1898, held that a "thorough scrutiny, and a careful balancing of the equities on both sides" is a prerequisite to rejection of a collective bargaining agreement. 519 F.2d at 707, *quoting from, In re Overseas National Airways, Inc.,* 238 F.Supp. 359, 361 (D.E.D.N.Y.1965). The Third Circuit, in *In re Bildisco,* 682 F.2d 72, 79 (3d Cir.1982) *cert. granted,* —— U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983),

agrees that a "thorough scrutiny, and a careful balancing of the equities on both sides" is required. The Eleventh Circuit has recently endorsed this element of the *Bildisco* holding. *Matter of Brada Miller Freight Systems, Inc.,* 702 F.2d 890 (11th Cir.1983).

However, a conflict clearly exists between the Second Circuit and the Third and Eleventh Circuits inasmuch as the *Bildisco* decision disapproves the approach taken by the Second Circuit in *Brotherhood of Ry., Airline and Steamship Clerks v. REA Express, Inc.,* 523 F.2d 164 (2d Cir.), *cert. den.,* 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 82 (1975) a decision announced shortly after *Kevin Steel. Bildisco* criticizes the holding in *REA Express* that rejection should be permitted "only where it clearly appears to be the lessor of two evils and that unless the agreement is rejected, the carrier will collapse and the employees will no longer have their jobs." *REA Express,* 523 F.2d at 172, *as quoted in, Bildisco,* 682 F.2d at 79. The *Bildisco* court also disapproved several lower court decisions which, apparently building upon *REA Express,* construe *Kevin Steel* as requiring a two step determination that not only must the equities be balanced and found to favor the debtor, but that failure to reject the contract will result in the collapse of the business. 682 F.2d at 79–80.

We need not choose between *Bildisco* and *REA* as we hold that given the present record, the judgment cannot stand under either standard. There is no apparent justification for the trial court's having taken the precipitous step of authorizing rejection of the contract when the Union had been given only one day's notice of Kirkpatrick's application to reject. Although in colloquy the trial court offered to permit the Union to submit evidence that might induce it to reconsider its judgment, we hold that there was no fair opportunity given the Union to submit evidence. Under these circumstances the court could not possibly have engaged in the process of "thorough scrutiny and careful balancing of equities" that the Second, Third, and Eleventh

Circuits all agree is required. We hold that this failure requires us to reverse the order and remand the case.

## III

Our description of the court's motivation is based upon inference from the trial transcript. Its failure to make express findings of fact hampers our ability to determine what standard it applied or what equitable considerations influenced its decision. The *Brada Miller* decision in particular emphasizes the importance of adequate findings given the delicacy of the balancing process and sensitivity of the conflict between the policies of the bankruptcy and labor laws. 702 F.2d at 901, n. 37. Although we do not rest our reversal upon the trial court's failure to enter findings, we urge that upon remand it fully articulate the reasons for any subsequent actions taken in order to avoid ambiguity regarding these issues.

## IV

█ The Union's argument that Kirkpatrick should have been required to show that it is not "improperly motivated" by a desire to rid itself of the Union is more troublesome. The Union relies upon language contained in the *Kevin Steel* decision to the effect that where there is evidence that the debtor has engaged in unfair labor practices, the debtor should be required to present evidence that its motives are not tainted. 519 F.2d at 707. The Eleventh Circuit's decision in *Brada Miller* while citing *Kevin Steel* on the issue, seems to require that the court make a finding on the issue in all cases. 702 F.2d at 901.

We think both *Brada Miller* and the Union read *Kevin Steel* too broadly in this regard. The language in *Kevin Steel,* relied upon by the Union and cited by *Brada Miller,* was clearly directed to the concern that the business reorganization process and contract rejection power not become tools in a continuing campaign of unfair labor practice. Thus, under *Kevin Steel,* the issue of improper motive is relevant only when there is evidence of a pattern of unfair labor practice or other conduct that

might give rise to an inference that the debtor is improperly motivated. In this case the only alleged unfair labor practice was Kirkpatrick's postpetition unilateral repudiation of the contract made in the mistaken belief that he did not need court approval. We believe that this is simply not the kind of activity that the *Kevin Steel* court ·meant to suggest should alert the trial court to the existence of an improper motive.

· The two cases cited by the Union regarding this issue, *Century Printing,* 242 NLRB No. 108, 101 LRRM (BNA) 1227 (1979) and *In re Connecticut Celery,* 106 LRRM (BNA) 2847 (Bk.D.Conn.1980) do not support its position. *Century Printing* is a NLRB decision relating only to the effective date of the rejection of a labor contract in connection with a chapter XI case under the 1898 Bankruptcy Act. *In re Connecticut Celery,* involved the unilateral abrogation of a labor contract by a debtor who was also the subject of a chapter XI proceeding under the 1898 Bankruptcy Act. The court held that a debtor in possession may not unilaterally reject a labor contract; that the employer acted at its own peril in repudiating the contract without court approval; and that rejection would not be authorized in that case. Significantly the court did not state that the "unilateral abrogation" was a factor in refusing to permit rejection. Thus, by inference, the case stands for precisely the opposite proposition than that for which the Union urges.

Accordingly, we decline to rest our decision upon failure by the trial court to demand evidence regarding Kirkpatrick's motivations.

The judgment is REVERSED and the case REMANDED.

VOLINN, Bankruptcy Judge, concurring:

I concur with the majority in its disposition and insofar as it holds that the Union was given insufficient notice and opportunity· to prepare a response and be heard on Kirkpatricks' application to reject the collective bargaining agreement.