**In the Matter of GRAY TRUCK LINE COMPANY, Debtor.**

**Bankruptcy No. 83–1732.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 16, 1983.

Amended Order on Motion to Reject Labor Contract Oct. 14, 1983.

Mary Taylor, Tampa, Fla., for debtor.

Mark Kelly, Tampa, Fla., Robert Stropp, Birmingham, Ala., for U.S.W.A., Local 5628.

## ORDER ON MOTION TO REJECT LABOR CONTRACT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a reorganization case filed on August 17, 1983 by Gray Truck Line Company (the Debtor). The matter under consideration is a Motion to Reject the Labor Contract filed on the same day by the Debtor. Ordinarily, debtors involved in Chapter 11 cases are not in a hurry to take an affirmative position on executory contracts either by an attempt to reject or to assume such contracts pursuant to § 365 of the Bankruptcy Code. However, considering the type of executory contract involved in this case, the Debtor's haste to act in this instance is understandable. This is so because the contract sought to be rejected is not an ordinary commercial executory contract, but a collective bargaining agreement between management and labor entered into by the parties as a result of extensive negotiations between the Debtor and the United Steel Workers of America (Union), a properly certified bargaining unit by the National Labor Relation Board. This agreement being a collective bargaining agreement would ordinarily be governed by the applicable provisions of the elaborate statutory scheme designed by Congress to govern the economic relations between management and labor. The difficulty arises from the fact that one of the parties to this executory contract under consideration is a debtor who seeks relief under the protective and remedial provisions of the Bankruptcy Code and as a debtor-in-possession, now seeks to reject an otherwise valid contract as it has a right to do so pursuant to the specific provisions of the Bankruptcy Code, § 365.

Inasmuch as the agreement sought to be rejected by the Debtor will expire on October 31, 1983, it became evident at once that the Motion to reject this contract deserved special and prompt attention because any delay in the resolution of the Motion would moot the matter and it would be tantamount to an outright denial of the Motion without giving an opportunity to the Debtor to present relevant evidence in support of its Motion. For this reason, this Court agreed to consider the Motion on short notice. At the duly scheduled hearing, albeit, on short notice, the following relevant facts have been established:

The Debtor is a Florida corporation and was, and still is, engaged in the operation of a truck line transporting goods primarily used in the citrus industry located in Central Florida. It is a closely held family corporation. Its non-managerial employees are members of Local 36 of the Union. On November 1, 1981, the Debtor and the Union entered into a collective bargaining agreement which contained extensive provisions dealing with the respective right of the parties, inter alia, a detailed wage schedule which in addition to fixing the hourly wages of the members of the Union per specific classification, also called for a cost of living increase for all rates set forth in the wage schedule. The increase of wages pursuant to Article VIII of the collective bargaining agreement is tied to Consumer Price Index (CPI) established by the Bureau of Labor Statistics and was to be determined by a specific formula set forth in the agreement.

Although the Debtor might have been moderately successful in its business initially, it is without dispute that due to many factors sustained continuing heavy losses during the last few years before it filed its petition for relief for reorganization. Thus, between January 1, 1983 and July 31, 1983, the Debtor suffered a net operating loss from its truck line operation of $325,000 and it appears that it will suffer an additional operating loss from the operation of its truck line during the remaining period under its contract with the Union, i.e. by October 31, 1982. The evidence presented in support of the Motion indicates that these losses are largely attributable to the Debtor's inability to be competitive in the market because of the high cost of the operation of its truck line due to, in large measures, its obligations flowing from the collective bargaining agreement which requires the Debtor to pay a cost of living increase to the employees covered by the

labor contract. The fact of the matter is that the Debtor failed to pay its contribution to the Pension Fund of the Union for the year 1981 due to lack of funds although the Debtor applied for and obtained an extension from the Internal Revenue Service for that year, neither did the Debtor pay its share of contribution for the year 1982 to the Pension Fund. While it applied for an extension the Debtor had not yet received it from the Internal Revenue Service.

While it is true that the Debtor, in addition to the operation of the truck line, owned and operated in the past, and still owns and operates, an orange grove, all of its operating losses are basically attributed to the operation of the truck line. Thus, it appears that during the last few years the Debtor, in order to continue to operate its truck line, was forced to charge $.96 and $1.04 per mile respectively when its cost per mile in 1983 was $.99 and $1.16 per mile. While it is true that these operating losses were not caused solely by the Debtor's obligations flowing from the collective bargaining agreement with the Union, many other factors played a part in its operating losses such as an increase in cost of fuel, increase in interest rates and there is no doubt that the wage structure of its labor contract did significantly contribute to these losses. It is evident that the cost position of the Debtor is critical and due to its poor cost position, it is unable to meet its obligations in full under the collective bargaining agreement with the Union.

Its poor competitive position in the area of its trucking operation is further evidenced by the fact that common carriers of general freight operating in Central Florida, the general operation area of the Debtor, do not operate under a labor contract (Debtor's Exh. # 1—Financial and Operating Statistics—First Quarter of 1982, 1983); have substantially lower operating overhead; and as a consequence, are able to outbid the Debtor when bidding on hauling contracts. While the evidence presented by the Debtor fails to indicate that these losses cannot be minimized or even completely eliminated by measures of economy in the overall operation, in an area other than in the area covered by the collective bargaining agreement sought to be rejected, this Court is satisfied that under the unique circumstances the Debtor's Application to Reject this labor contract is meritorious and should be granted for the following reasons:

As noted earlier, this is an Application to Reject an Executory Contract by a Debtor involved in a relief Chapter case in this instance in a reorganization case under Chapter 11. There is no question that ordinarily this would not present any special problem since § 365 expressly authorizes rejection of executory contracts or unexpired leases by a trustee or by a debtor. Moreover, it is well established that in the case of a run-of-the-mill executory contract or an unexpired lease, it is no longer necessary to be established by the debtor that the executory contract sought to be rejected is "economically burdensome" but it is sufficient that the decision to reject an executory contract is based on a business judgment which the courts will not ordinarily question. 2 *Collier on Bankruptcy*, 365.-03 (15th ed. 1981)

The difficulty arises, however, when the executory contract sought to be rejected is not an orthodox commercial unexpired executory contract, but a collective bargaining agreement originally contracted by an employer and a duly certified bargaining unit and the employer for whatever reason becomes a debtor seeking relief under the protection provisions of the Bankruptcy Code.

In such a situation, there is a seemingly irreconcilable conflict between two statutory schemes enacted by Congress, one designed to assure industrial peace and economic stability through the collective bargaining process under the provision of §§ 7 and 8 of the N.L.R.A., 29 U.S.C. §§ 157 and 158; the other designed to enable financially distressed debtors to achieve rehabilitation through the remedial provision of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. This latter goal is promoted by numerous specific tools designed by Congress availa-

ble to the Debtor seeking rehabilitation. Among its several provisions, the Debtor or the trustee is authorized to continue to operate the business; provides for an automatic stay by § 362 of the Code; all of which are designed to give the Debtor or trustee the needed breathing spell and protection from collection efforts of creditors. One of the most important of these tools available to a debtor is the right to either assume under certain specific conditions an executory contract or an unexpired lease pursuant to § 365(b)(1)(A), (B), (C) or to reject the same as burdensome pursuant to § 365(a) of the Bankruptcy Code. 2 *Collier on Bankruptcy,* 365.01–03 (15th ed. 1981).

On the other hand, § 8(d) of the N.L.R.A. provides that no party to a collective bargaining agreement may "terminate or modify" the agreement without following specific provisions which include a requirement to give a written notice due to the party to the contract; offer to meet and confer with the other party; give notice to the Federal Mediation and Conciliation Service. More importantly, this Section provides that a contract continues in full force and effect without resorting to striking or locking out all the terms and conditions of the existing contract for a period of 60 days after the notice. This last provision, of course, is in clear conflict with § 365 of the Bankruptcy Code which permits a debtor to reject a burdensome executory contract. Thus, it is evident that this conflict between § 365 of the Bankruptcy Code and § 8(d) of the N.L.R.B. calls for an initial inquiry addressed to the question whether or not a labor contract due to its peculiar nature is meant to be excluded by Congress from the group of executory contracts which a debtor may assume or reject.

 The legislative history of the enactment of § 365 leaves no doubt that Congress did not intend to immunize collective bargaining agreements from the debtor's power to reject executory contracts. It is clear that Congress failed to accord collective bargaining agreements a special treatment unlike the treatment accorded to shopping center leases, § 365(b)(3) to com-

modity future contracts, § 765, 766. Most importantly, Congress did single out one special type of collective bargaining agreement by § 1167 of the Bankruptcy Code which prohibits the Court or the trustee to change the wages or working conditions of employees of the debtor established by collective bargaining agreements subject to the Railway Labor Act (45 U.S.C. § 151 et seq.) except in accordance with § 6 of such Act, 45 U.S.C. § 156. Thus, there is no doubt that a collective bargaining agreement, with the specific exception noted, is an executory contract subject to the debtor's right to assume or to reject pursuant to § 365 of the Bankruptcy Code. In addition, it is now well established by all courts which considered this question that collective bargaining agreements are executory contracts and not outside the reach of the trustee's power to either assume or reject the same. *Brotherhood of Railway Airline and Steamship Clerks v. REA Express, Inc.,* 523 F.2d 164 (2d Cir.), *cert. denied,* 423 U.S. 1017, 1073, 96 S.Ct. 451, 855, 46 L.Ed.2d 388, 47 L.Ed.2d 82 (1975); *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698 (2d Cir.1975); *NLRB v. Bildisco (In re Bildisco),* 682 F.2d 72 (3rd Cir. 1982); *Local Unions 20 et al v. Brada Miller Freight System, Inc. (In re Brada Miller Freight Systems, Inc.),* 702 F.2d 890 (11th Cir.1983). *Borman's, Inc. v. Allied Supermarkets, Inc.,* 706 F.2d 187 (6th Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 263, 78 L.Ed.2d 247.

 This leaves for consideration the question what is the proper standard which must be used in determining whether or not a debtor should be permitted to reject a collective bargaining agreement. The usual test for rejection of an ordinary executory contract is the so-called business judgment test, i.e. would the rejection benefit the estate. 2 *Collier on Bankruptcy,* 365.03 (15th ed. 1981). The application of this test does not call for balancing of equities nor require a consideration of the impact of the rejection on the right of the other party whose contract is sought to be rejected. Due to the peculiar nature and characteris-

tics of a collective bargaining agreement, it is without any serious dispute that the basic "business judgment standard" is not applicable. All courts presented with this problem agreed on this point. The difficulty stems from the facts that there is still a wide disagreement between the courts as to the proper standard to be used when called upon to approve a request to reject a labor contract. *REA Express, supra; Kevin Steel*, supra.

The impact of the rejection of a collective bargaining agreement on the rights of workers and the favored status those rights have been traditionally accorded by Congress require a much more stringent examination of the evidence offered in support of a request to reject a collective bargaining agreement. As stated by the Second Circuit in the case of *Kevin Steel, supra*, a "thorough scrutiny and a careful balancing of equities of both sides must be considered before a collective bargaining agreement is permitted to be rejected." Citing, *In re Overseas National Airways, Inc.*, 238 F.Supp. 359, 361 (E.D.N.Y.1965). While no one can quarrel with this standard, the difficulty arises from the fact that cases subsequent to *Kevin Steel, supra* expended on the holding and stated that this balancing of equity tests requires a showing that a collective bargaining agreement cannot be rejected unless it will thwart the efforts to save a failing carrier in bankruptcy from collapse. According to these cases, only when it clearly appears that the rejection is the lesser of two evils and unless the agreement is rejected, the carrier will collapse and the employees will no longer have their jobs. *REA Express, supra*. Subsequent decisions relying on the decision in REA Express attempted to establish a two step analysis which required first a determination that the agreement is, in fact, burdensome to the estate so that failure to reject will make a successful arrangement impossible and second, the balancing of the equities is found to be in favor of the Debtor. See, *In re Allen Wood Steel Co.*, 449 F.Supp. 165 (E.D.Pa.1978), appeal dismissed 595 F.2d 1211, 1214 (3rd Cir.1979); *In re*

*Penn Fruit Co.*, 92 L.R.R.M. (BNA) 3548 (E.D.Pa.1976).

The unrealistic approach of *REA Express, supra* and its progenies were clearly demonstrated by the well-reasoned analysis of the matter under consideration by the Third Circuit Court of Appeals speaking through Judge Aldisert in the case of *In re Bildisco, supra* who stated that any one who is even remotely familiar with the procedure and the progress of a Chapter 11 reorganization case must realize that it is impossible to predict the success or failure of the reorganization until quite late into the proceeding. The absurdity of the proposition advanced by *REA Express, supra* is clearly illustrated by the present case where the petition for relief was filed on August 18, 1983, and the Application to Reject the Executory Contract was filed 10 days later. Accordingly, the imposition of a test of *REA Express, supra*, the test espoused by its progenies would elevate a collective bargaining agreement over the more pragmatic and more realistic business considerations because it fails to give any consideration at all to the potential consequences of a debtor-in-possession's inability to reject a collective bargaining agreement. The most obvious result which may flow from the debtor-in-possession's inability to reject is not only a possible frustration of the Debtor's efforts to obtain rehabilitation under Chapter 11, but the very real likelihood of a total destruction of the Debtor's of the Debtor's chances to reorganize, thus, forcing the Debtor into a liquidating Chapter 7 case. Thus, if the Union succeeds and is able to prevent the Debtor-in-Possession from rejecting the collective bargaining agreement, it would be only a pyrrhic victory because in the case of a forced liquidation, the members of a union would not have any jobs at all.

To apply the test developed by *REA Express, supra* is additionally unrealistic unless this Court rejects the "new entity" theory advanced by the Second Circuit in the case of *Kevin Steel, supra* and adopted by the Third Circuit in *In re Bildisco, supra*, the Debtor-in-Possession is not bound by the terms of the collective bargaining

agreement unless it affirmatively assumes the same. Thus, in such an instance a refusal to permit a debtor-in-possession to reject would be tantamount to compelling the debtor-in-possession to assume. This creates an anomalous situation because the Debtor-in-Possession cannot assume an executory contract unless it promptly cures all arrearages and compensates for any damages which might have been caused because of the breach, and lastly, presents competent evidence to establish that it is able to perform in the future pursuant to § 365(b)(1)(A), (B), (C). Under these preconditions required by the Code for assumption, it is clear that this Debtor-in-Possession does not have funds to cure an already existing default, nor does it have funds to compensate the Union for damages and certain it is not in the position at this time to assure future performance of the collective bargaining agreement.

The Eleventh Circuit in the case of *Brada Miller, supra,* when faced with the identical issues involved in *In re Keving Steel, supra* and *In re Bildisco, supra,* refused to accept the "new entity" theory as applied in controversies relating to the Debtor-in-Possession's right to reject collective bargaining agreements. The Court in *Brada Miller, supra,* rather than to side-step the apparent conflict between § 365 of the Bankruptcy Code and § 8(d) of the N.L.R.A. found it to be "more beneficial to recognize the conflict and attempt to reconcile it in a manner which best effectuates the intent of Congress." In order to achieve this goal, the Court in *Brada Miller, supra* enumerated several factors which a Bankruptcy Court must follow when considering a request by a Debtor-in-Possession to reject a collective bargaining agreement. While some, or possibly all, of these factors might be relevant generally, they are clearly not helpful and relevant in the present instance for the following reasons: This particular bargaining agreement under consideration, as noted earlier, will expire by its own terms on October 1, 1983 or in two weeks. It is clear that the Debtor-in-Possession who rejects a collective bargaining agreement remains an employer and is still required by the N.L.R.A. to bargain with the representatives of its employees, *Kevin Steel, supra* at 704. The corollary of this is that the employees also retain their right to strike should negotiations fail. *See, In re Ryan Co.,* 83 ALB Cas. (CCH ¶ 10,487 at 17,952 n. 2) (D.Conn.1978). The net effect of the rejection of this particular bargaining agreement is simply that the Debtor-in-Possession must commence to negotiate with a Union two weeks earlier than provided for by the original collective bargaining agreement and still will face the possibility of the strike if it is unable to reach an agreement with the Union. Thus, if the Debtor-in-Possession desires to maintain peace with its Union, it must sooner or later come to an agreement and, as noted, the only difference is it must commence negotiation two weeks earlier. The benefit by rejection which will be conferred on the Debtor-in-Possession by rejection is simply that any monetary benefits flowing from the collective bargaining agreement will not accrue as an administrative charge against the estate as the result of the rejection which, ordinarily, would be entitled to a priority treatment under § 507 of the Bankruptcy Code, but will be deemed to be a general unsecured claim only. The net result of the rejection of the collective bargaining agreement is the loss of a priority status of the claims of the members of the Union, but only for a very short period of time which might accrue during the pendency of the reorganization but which will cease to accrue in any event in less than three weeks by virtue of the termination of the collective bargaining agreement. Thus, the benefits conferred by the rejection on the Debtor-in-Possession is substantially greater and outweighs the detriment visited on the members of the Union as the result of the rejection which, albeit, is present but not to a great degree.

Considering all these factors, this Court is satisfied, therefore, that the Application to Reject this bargaining agreement is proper under the circumstances.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Gray Truck Line Company be, and the same hereby is, authorized to reject its collective bargaining agreement with Local 5628 of the Teamsters, the recognized bargaining unit representing some of the employees of the Debtor. It is further

ORDERED, ADJUDGED AND DECREED that the Union may file a proof of claim for damages as a result of the rejection of the collective bargaining agreement which, by virtue of § 365, shall be deemed to be a pre-petition general unsecured claim.

## AMENDED ORDER ON MOTION TO REJECT LABOR CONTRACT

THIS CAUSE came on for consideration upon the Court's own motion for the purpose of amending the Order on Motion to Reject Labor Contract entered September 16, 1983.

The Court considered the record and finds that through inadvertence, the Union was identified as Local 68 of the Teamsters Union rather than Local 5628 of the United Steelworkers Union. It further appears that the Order stated that the collective bargaining agreement between the Debtor and the Union will expire October 31, 1983 rather than the correct date of October 29, 1983.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Order of September 16, 1983 entered by this Court on the Motion to Reject Labor Contract be, and the same hereby is, amended to reflect that the collective bargaining agreement sought to be rejected by the Debtor will expire on October 29, 1983 and the Union are members of Local 5628 of the United Steelworkers.